# CHARLES HERBOTH, Appellant, v. AMERICAN RADIATOR COMPANY, Respondent.

### St. Louis Court of Appeals, November 16, 1909.

1. **LANDLORD AND TENANT: Lease: Agreement by Lessee to Repair: Effect of Making New Lease.** In an action by a lessor against a lessee for damages arising from the failure of the latter to keep the demised premises in repair, as required by the lease, where, before the expiration of the lease, it was extended by mutual agreement, the document providing for such extension containing a provision that all the covenants of the original lease should be and remain in full force and effect during the extended term, *held*, the new agreement bound the lessee to performance of all the covenants contained in the original lease, and against an express agreement of that kind the law will not imply, from the surrender of the original lease, a waiver or discharge of performance of its covenants; and hence the lessee could derive no defense from the new agreement for the breach, either prior or subsequent to its date, of any covenant in the original lease.

2. ——: ——: ——: ——. The law does not deduce a relinquishment or waiver of liability accrued under a lease from the bare acceptance by the landlord of a surrender of such lease or the granting of a new one to the tenant; but those acts do extinguish the right to demand performance, or damages for non-performance, of covenants which the tenant had further time to perform beyond the date of surrender, and unless performance of covenants of that kind is retained by expression or implication in the new lease, it must be taken as waived.

3. ——: ——: ——: **Repairs Must be Made as Needed.** A covenant in a lease binding the lessee to make repairs from time to time is not satisfied by making repairs at any time before the premises are surrendered to the landlord, but repairs must be made when needed.

4. ——: ——: ——: **Agreement Runs with Land.** A covenant in a lease binding the lessee to make repairs from time to time runs with the land and is binding on the assignee of the lessee.

5. ——: ——: ——: **Construction of Provisions: Natural Deterioration.** Where a lease expressly excepted from the obligation to repair, injury due to natural wear and decay, but im-

posed upon the lessee the duty to repair damage done to the buildings by the negligence of his employees, careless usage "or from any other cause whatever," the phrase "or from any other cause whatever" must be read in connection with the prior exception of natural wear and decay and must mean any cause other than the latter; and rusted guttering, leaky roof and other like particulars of bad repair did not fall within the covenant to keep in repair, for said covenant did not require the lessee to counteract the effect of natural deterioration.

6. ———: ———: Covenant to Return Premises in as Good Condition as When Received: Runs With Land. A covenant in a lease binding the lessee at the expiration of the term to surrender the premises to the lessor, his heirs, assigns, or successors in the condition received, except natural wear and decay, runs with the land and is binding on the assignee of the lessee.

7. ———: ———: ———: Effect of Making New Lease. A lease provided the lessee should, at the expiration of the term, surrender the demised premises to the lessor in as good condition as when received. Before the expiration of said term, a new lease was made to begin at the expiration of said term, which contained a stipulation requiring the lessee, at the end of the term thereby created, to surrender possession of the premises in as good condition as when received, and which further provided that the lessee should take the premises in their present condition. The buildings had been altered during the term of the first, but before the date of the second, lease. *Held*, the effect of the second lease was to bind the lessee to return the premises at the end of the term in the altered condition they were in at the date of the second lease, and not the condition they were in at the date of the first lease.

8. CONTRACTS: Subsequent Contract Supersedes Prior One. Where a later contract is entered into between the same parties in relation to the same subject-matter as the earlier one, and fully covers the terms of the earlier one, the later contract supersedes the earlier one.

9. LANDLORD AND TENANT: Lease: Covenant to Return Premises in as Good Condition as When Received: Effect of Making New Lease: Waiver. A lease for a fixed term bound the lessee to surrender the premises at the expiration of the term in the condition received. A renewal lease executed before the expiration of the term stipulated that the lessee should take the buildings in their present condition and should surrender possession thereof in as good condition as received. The lessee had altered the building before the renewal. *Held*, that performance of the covenant in the original lease was waived by the

execution of the renewal lease, because the lessee or his assignee had until the end of the original term in which to restore the premises to their original condition.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams*, Judge.

AFFIRMED.

*John A. Gilliam* for appellant.

(1) The court erred in excluding the evidence offered by the plaintiff. Walker v. Seymour, 13 Mo. 592; McGregor v. Board of Ed., 107 N. Y. 517; Buhler v. Gibbons, 3 N. Y. Supp. 815; Hooker v. Banner, 76 Cal. 116; Willoughby v. Furnishing Co., 93 Me. 185; In re Jewell, Fed. Cas. 7302; Genau v. Dist. Columbia, 20 Ct. Cl. 389; Reed v. Harrison, 196 Pa. St. 337.    (2) The court erred in giving instruction to the jury to find for the defendant. Walker v. Seymour, 13 Mo. 592; McGregor v. Board of Ed., 107 N. Y. 517; Buhler v. Gibbons, 3 N. Y. Supp. 815; Hooker v. Banner, 76 Cal. 116; Willoughby v. Furnishing Co., 93 Me. 185; In re Jewell, Fed. Cas. 7302; Genau v. Dist. Columbia, 20 Ct. Cl. 389; Reed v. Harrison, 196 Pa. St. 337.

*Geo. L. Edwards* for respondent.

"The acceptance of the new lease was equivalent to a surrender of the possession of the landlord and a re-entery under the new, in lieu of the old tenancy, and the appellant thereupon was in possession of the demised premises by virtue of such new agreement of tenancy, and former rights as well unqualified as contingent, under the prior lease, were effectually extinguished and abandoned." St. Louis v. Nelson, 108 Mo. App. 218; Champ Spring Co. v. Roth Tool Co., 103 Mo. App. 103; Anthony v. Rockefeller, 102 Mo. App. 326; Williams v. Lane, 62 Mo. App. 66; Cohen v. Witteman, 100 Civ. App. Div. (N. Y.) 338; Loughran v. Ross, 45 N. Y. 792; Tuggles v. Calliston, 143 Mo. 536.

GOODE, J.—Frederick C. Bonsack leased to the St. Louis Radiator Manufacturing Company by an instrument dated February 17, 1896, a tract of land with buildings on it in the city of St. Louis, which tract fronted 335 feet on the west side of Talmadge avenue where it intersected the Missouri Pacific Railroad Company's tracks, and had a depth of 146 feet along the north line of said railroad. On the premises stood a brick foundry and warehouse building which were included in the leasehold. The term was to run nine years and seven months and expire September 24, 1905, and the rental was to be $235 a month, payable in advance. The lessor Bonsack had erected the warehouse building for the use of the lessee and in accordance with its plans and specifications. One of the clauses of the lease was as follows:

"And it is hereby covenanted that at the expiration of this lease the said premises are to be surrendered to said lessor, his heirs, assigns or successors, in the condition received, only excepting natural wear and decay or the effects of accidental fire; and it is hereby covenanted that said second party will, from time to time, repair, at its own expense and to the satisfaction of said lessor, any damage done to the said buildings, by negligence of its employees, careless usage or from any other cause whatever; and upon failure to do so, then it is agreed that said lessor, his heirs or assigns shall or may repair or remedy the same and the amount expended for the performance thereof, shall be repaid to him or them on demand."

The St. Louis Radiator Manufacturing Company assigned the lease on February 1, 1889, to Robert F. Hall, and the latter assigned it on February 11, 1899, to defendant, the American Radiator Manufacturing Company. These assignments were assented to by the lessor Bonsack by an instrument signed by him, by the original lessee, the St. Louis Radiator Manufacturing Company,

and by defendant, on June 28, 1899, wherein, to quote from defendant's brief, "The American Radiator Company expressly agreed to be bound by all the conditions, stipulations and penalties thereby imposed upon the St. Louis Radiator Manufacturing Company thereafter." Bonsack, the lessor, sold the premises to plaintiff Charles Herboth June 25, 1900, and on the same day assigned his interest as landlord in the lease to Herboth. On December 28, 1904, by an agreement in writing, executed by plaintiff and defendant, the original lease, which would not expire until September 24, 1905, was extended beyond the date of the expiration to December 31, 1905, or about three months. This instrument recited the making of the lease and its assignment to defendant, and that the parties had agreed to and did extend the term to expire December 31, 1905. In it was this clause:

"It is further agreed and understood that all of the remaining covenants and agreements in said lease contained, be and remain in full force and effect, except as herein modified, during the term thus extended."

Afterwards, on September 8, 1905, and while the original lease was still in force, plaintiff and defendant entered into articles of agreement by which plaintiff leased to defendant for three years from January 1, 1906, the premises let in the original lease, and at the same rental of $235 a month. The term created by the last agreement was for three years with a privilege to the lessee (defendant) to cancel the lease at the end of the second year by giving four months' written notice of its intention to do so. The lessor (plaintiff) was also allowed to cancel the lease at the end of the second year by giving four months' notice. Defendant exercised its option to cancel the lease by giving notice, and in consequence thereof the term ended December 31, 1906, and defendant removed from the premises. Among other terms of the last lease, to-wit, the one executed September 8, 1905, between plaintiff and defendant, were the following:

"And finally, at the end of its term it (*i. e.,* defendant) will surrender to said Charles Herboth, his heirs or assigns, the peaceable possession of the said houses and premises, with all the keys, bolts, latches and repairs, if any, in as good condition as it received the same, the usual wear, use and providential destruction, or destruction by fire excepted. The said lessee and all holding under it, hereby engage to pay the rent above reserved, and double rent for every day it or any one else in its name shall hold on to the whole or any part of said tenement after the expiration of this lease, or its forfeiture for non-payment of rent, etc.

"It is further agreed that the lessor shall not be liable for any damage done or occasioned by or from plumbing, gas, water, or other pipes, or sewerage in, above, upon or about said buildings or premises, nor from any damage arising from acts or neglect of co-tenants or other occupants of the same building, or from any owners or occupants of adjacent or contiguous property.

"Lessee takes building and premises in their present condition and does all repairs at his own expense, lessor, however, pays the taxes, general and special, and the insurance."

While defendant and its predecessor, the St. Louis Radiator Manufacturing Company, occupied the premises, alterations were made in the buildings to adapt them better to the purposes of the lessees. These alterations consisted of bricking up some of the windows, the removal of one room of a building, putting a second story on the west part of one structure, and perhaps there were some other changes. We understand these changes were made after the assignment of the lease to defendant and while it was in occupancy. Proof of the changes was not admitted by the court, though it was offered, and the exclusion of the evidence is one of the errors assigned. Evidence was offered to show, too, the roof had fallen into bad repair and was leaky, the down-

spouts and other parts of the guttering were out of order, and that to repair the roof so as to prevent it from leaking, make the premises tenantable and put the buildings in the condition they were in when they were leased by Bonsack, would cost $2923. The testimony was excluded by the court for the reason which will be apparent from what is to be stated next. This action declares on the original lease executed by Bonsack to the St. Louis Radiator Manufacturing Company and acquired through mesne conveyances by defendant. The petition states the fact of making the lease, its terms, the several assignments of it, acquisition of the fee by plaintiff from Bonsack, alterations and changes which had been made in the buildings by defendant, bad state of repair of the guttering and roof and other parts of the buildings. It then pleads the clause of the first lease by which the lessee covenanted to surrender the premises to the lessor, his heirs, assigns or successors at the end of the term in the condition received, only excepting natural wear and decay or the effects of accidental fire, and the further covenant of the lessees to repair from time to time at its own expense and to the satisfaction of the lessor, any damage done to the buildings by "negligence of its employees, careless usage, or from any other cause;" alleges defendant became liable by virtue of the assignment of the lease to it, for all defaults of the original lessee, the St. Louis Radiator Manufacturing Company; that defendant had failed to keep the buildings and improvements in repair as required by the lease, from careless usage and other causes, had failed to surrender the premises in the condition received at the end of the term, only natural wear and decay excepted, and alleged plaintiff had been damaged by those defaults in the sum of $3300, for which judgment was prayed. Without epitomizing the answer, it suffices to state the defense to the action was that plaintiff had, by the extension of the original lease on December 28, 1904, and the granting of the new

lease on September 8, 1905, both of which acts occurred while the original lease was still unexpired, accepted and defendant had surrendered, the original term, plaintiff had waived any claim against defendant by reason of the defaults and breaches under the first lease, and defendant had been discharged from liability on the covenants of said lease. In reply to the answer, besides a general denial, plaintiff averred that neither the extension dated December 28, 1904, nor the new lease granted September 8, 1905, was made for the purpose of satisfying and discharging the covenants in the original lease, and that said agreement did not extend the time for performance of said covenants or waive their performance. As suggested supra, the court excluded practically all the evidence offered by plaintiff in support of its petition on the ground that by the execution of the extension of the original lease, which extension was treated as creating a new term, and the execution of the lease dated September 8, 1905, all liability of defendant under the covenants of the first lease were discharged. The jury were directed to return a verdict in defendant's favor and plaintiff appealed.

It should be premised that the excluded evidence tended to show some, if not all, the alterations of the buildings on the leased premises, were made by defendant itself while it was in possession as assignee of the original lease and prior to September 24, 1905, the date of the expiration provided for in said lease and, of course, prior to September 8, 1905, the date of the new lease. The evidence tended to prove the leaky and decayed state of the roof and guttering and the other phases of decay and bad repair of the buildings existed before said dates.

In our opinion plaintiff's right to redress for any default of defendant in respect of making repairs in conformity to the stipulation in the first lease, and his right to redress on account of defendant's not restoring the premises to their original condition and turning

them back to plaintiff in that condition when defendant vacated stand on different grounds. We also think the effect of the extension of the original lease and of the execution of the new lease on plaintiff's right to redress for these two alleged defaults should be separately discussed, as the two instruments contain terms of dissimilar bearing on the case. Whether the document of December 28, 1904, created a new tenancy and term or only set forward the date of expiration of the term already in course, it did not undertake to abrogate the conditions and covenants on which the leasehold had been granted, save as to when the term should end, but on the contrary stipulated "that all the remaining covenants in said lease (*i. e.*, the original one) contained should be and remain in full force and effect, except as herein modified, during the term thus extended." Instead of importing relinquishment by plaintiff of the obligation defendant was under as assignee of the first lease to make certain repairs, and to surrender the premises at the end of the term in the condition they were in when let, "only excepting natural wear and decay," the contract of December 28th reaffirmed in express terms, defendant's obligation to do those acts. Hence defendant can derive no defense from said contract for the breach, either prior or subsequent to this date, of any covenant in the original lease; for if the original lease was thereby surrendered and a new one taken as defendant contends, fallaciously we think, the new one held defendant to performance of all the covenants contained in the old one, and against an express agreement of that kind the law will not imply from the surrender a waiver or discharge of performance.

Turning next to the new lease executed on September 8, 1905, and during the currency of the tenancy created by the prior one, we find no stipulation in the new one by which plaintiff undertook to relinquish any cause of action or discharge defendant from any liabili-

ty already accrued on said date (September 8th) in consequence of the breach of some covenant in the first lease; and according to the weight of modern decision, the law does not deduce a relinquishment or waiver of such a liability from the bare acceptance by a landlord of a surrender of a prior lease and granting a new one to the tenant; but those acts only extinguish the right to demand performance, or damages for non-performance, of covenants which the tenant had further time to perform beyond the date of the surrender. Unless the performance of covenants of that kind is retained by expression or implication in the new lease, it must be taken as waived, because as the time in which they were to be performed by the tenant had not expired when the surrender was. accepted, manifestly no breach of them had occurred. [2 Underhill, Land. & Ten., sec. 736; Marshall v. Rugg, 6 Wyo. 270; Cohen v. Witteman, 100 App. Div. N. Y. 338, 340; Geddes v. Folliett (S. Dak), 94 N. W. 431.] The covenant to repair required repairs to be made "from time to time;" that is, as needed, and would not be satisfied by making them at any time before the premises were turned back to plaintiff. The covenant to repair ran with the land and was binding on defendant as assignee of the lease. [1 Underhill, L. & T., sec. 387.] Hence whatever repairs should have been made, according to the covenant, by the lessee, it was incumbent on defendant to make. The defect in plaintiff's assignment of error, so far as this covenant is concerned, is that the testimony offered did not tend to prove the buildings had fallen into bad repair from any other cause than "natural wear and decay;" and the lessee was not bound to counteract the effect of those causes of deterioration. The proviso in the lease, expressly excepted from the obligation to repair, injury due to natural wear and decay; and only imposed the duty to repair damage done to the buildings by the negligence of the employees, careless usage, "or from any other cause whatever." The words "any

other cause whatever" must be read in connection with the prior exception of natural wear and decay, and must mean any cause except the latter. It is true the words "natural wear and decay" occur in connection with the covenant about restoring the premises to the condition they were in when received; but as they were to be restored to that condition, minus natural wear and decay, it could not have been meant that defendant should counteract wear and decay with repairs. Rusted guttering, leaky roof and other particulars of bad repair of which plaintiff offered proof did not fall within the covenant of defendant as lessee; for "any damage done to the said buildings by negligence of its (lessee's) employees, careless usage," etc., did not mean damage due to neglecting to repair, because, as said, defendant was not obligated to prevent natural deterioration. Therefore we hold this excluded testimony had no tendency to establish a case on the ground that defendant had failed to make such repairs as the lease obligated it to make.

Plaintiff's other item of damage is for defendant's refusal to restore the altered buildings to the state they were in when the original lease was granted, and turn them over, after the cessation of occupancy, in that state. The main damages asked were for the expense which would be entailed on plaintiff in putting the altered buildings back to their original form by realtering them. One stipulation in the first lease bound the lessee to surrender the premises at the expiration of the term to the lessor, his heirs, assigns or successors, in the condition received, only excepting natural wear and decay, or the effect of accidental fire. This covenant, like the one to repair, ran with the land, and if no other contract in relation to the premises had been made, defendant, as assignee of the leasehold, would have been bound by the covenant. [1 Underhill, sec. 387.] But the second lease granted on September 8, 1905, for a term to begin January 1, 1906, contains

stipulations incompatible with the stipulation of the first lease for breach of which plaintiff has declared. The latter stipulation bound the lessee to turn over the premises in the condition they were received on the date of the first lease, February 17, 1896; whereas the second lease required defendant at the end of its term, to surrender possession of the houses and premises in as good condition as it received the same, usual wear and use and providential destruction by fire excepted. That proviso appears to contemplate a restoration of the premises by defendant at the end of the term granted in the second lease, in the condition the premises were received under that lease. A further stipulation in the second lease says the lessor takes the buildings and premises "in their present condition and does all repairs at its own expense; the lessor, however, pays the taxes, general and special, and the insurance." Considered in the aspect most favorable to plaintiff, the words "in their present condition" can only refer to their condition of the date of the instrument; to-wit, September 8, 1905. But the excluded testimony would prove all the alterations and changes of which plaintiff complains, were made anterior to said date. Hence the effect of the second lease was to bind defendant to return the premises to plaintiff at the end of the term in the altered condition they were in at the date of the second lease, and not the condition they were in at the date of the first lease. It is a general rule of law that when a later contract is entered into between the same parties, in relation to the same subject-matter as an earlier one, and fully covering all the terms of the first one, the second contract supersedes the first, which is regarded as having been abandoned by the parties. [Chrisman v. Hodges, 75 Mo. 413; Tuggles v. Calliston, 143 Mo. 527, 537.] The later agreement is taken to be the last expression of the will of the parties about the subject-matter of their dealings, and necessarily so, because parties who have made one contract about prop-

erty or any other subject-matter, have a right to make a later one composed of new stipulations and provisos.

This doctrine has been accepted as the rule of decision in cases like the one at bar, the courts holding a second lease of the same property entered into between the same parties, supersedes and abrogates the first one, though, as said, it will not destroy liabilities already incurred under the first, unless the intention to do so appears. [Ely v. Ely, 80 Ill. 532; Hoag v. Carpenter, 18 Ill. App. 555; Densten v. Mettag, 105 Wis. 459; Engeart v. Davis, 17 Neb. 228, 236; Harmon v. Harmon, 51 Fed. 113.] It cannot be said any cause of action had accrued on the first lease in respect of restoring the buildings and premises to the condition they were in when received under that lease, at the time the second lease was given. This was true because the lessee, or defendant as assignee of the original lessee, had until the end of the original term in which to restore the buildings to their first state. Now while this obligation was still executory and further time existed for its performance, plaintiff executed a new lease which recited defendant accepted the premises in the condition they were in at the date of the new lease and bound itself to return them in the condition they were at said time; an obligation wholly inconsistent with the duty to return them in the condition they were at the date of the first lease. This will be apparent upon reflecting that the first lease bound the lessee to surrender the premises without any alterations and changes which were afterwards made by the lessee, whereas the second lease bound defendant to restore the premises in their then condition; i. e., with the buildings in their altered state. As said supra, the covenant to return the buildings in their original state had not been broken, because defendant had until the end of the original term to do that. Therefore plaintiff waived perform-

ance of said covenant. [Reed v. Snowhill, 51 N. J. L. 163; Cohen v. Witteman, 100 App. Div. N. Y. 338; Geddes v. Folliett, 94 N. W. (S. Dak.) 431.] Plaintiff invokes Hooker v. Banner, 76 Cal. 116; McGregor v. Board of Education, 107 N. Y. 511 and Walker v. Seymour, 13 Mo. 417. In the first case the junior leases expressly bound the lessee to return the premises in the state they were when originally let; hence said case is not to the point. In the second case the junior leases were not taken to commence during the term of the first one as in the case at bar, but at its end, and when liability for the broken covenant had fully accrued. The same was true in the Missouri case.

The judgment is affirmed. All concur.