[Civ. No. 1872. First Appellate District.—February 6, 1917.]

J. H. EGAN, Respondent, v. FRED DODD, Appellant.

LANDLORD AND TENANT—OBLIGATION OF LESSEE TO MAKE REPAIRS.— Where a lease provides that the lessor shall not be called upon to make any repairs, and that the lessee will keep the demised premises in good order and repair at his own cost and expense, the latter is bound to make repairs ordered by municipal authority, and where such repairs are not made, and a portion of one of the walls of the premises collapses, the lessee is not entitled to abandon the premises, nor is he relieved from the obligation to pay the agreed rent.

ID.—TERMINATION OF HIRING—CODE PROVISION INAPPLICABLE.—Section 1932 of the Civil Code, providing that the hirer of a thing may terminate the hiring when the greater part of the thing hired per-

ishes from any other cause than the want of ordinary care of the hirer, is inapplicable to a lease which requires the lessee to make the repairs.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Geo. Cosgrave, for Appellant.

Short & Sutherland, for Respondent.

KERRIGAN, J.—The plaintiff commenced this suit to recover from the defendant a balance alleged to be due for laundry work. The defendant answered and also set up a counterclaim, in which he alleged that the plaintiff was indebted to him for the rent of premises situate in the city of Fresno, and held by plaintiff under two leases from the defendant. The judgment of the court was in favor of the plaintiff, and that the defendant take nothing by his counterclaim. Defendant appeals.

The question presented for determination is as to whether or not the plaintiff was entitled, under the circumstances of the case, to abandon the premises held under said leases, and thereby terminate them; and calls for a construction of the provision of the leases relating to the obligation to keep the premises in repair.

Concerning the lessee's obligation to repair, the lease of what is called the main building provides:

"The lessee also agrees that the lessor shall not be called upon to make any repairs or improvements whatever in said leased premises during the term of this lease, or any renewal thereof, and that he will at all times and at his own cost and expense keep said premises in good order, repair and condition, provided, however, that the lessor agrees to install"— (here follows an enumeration of certain improvements agreed to be made by the lessor, and a provision imposing on the lessor the repair of the roof of the building, but which are not involved in the present controversy). The other lease, covering a portion of the second floor of the building, contains the following covenant on the part of the lessee:

"That he will not call upon the lessor for any repairs, alterations, or maintenance during said term."

Both leases contain the additional covenant on the part of the lessee to the effect that: "He will surrender and yield up possession to the lessor all in good order and repair as the same is received by him, reasonable use and wear thereof and damages by the elements alone excepted." It appears that in December, 1913, two years before the plaintiff vacated the premises, the city engineer of the city of Fresno served a notice upon the defendant as owner of the leased premises, declaring the building to be dangerous in certain specified particulars, and requiring its demolition within sixty days thereafter. Following the receipt of this notice defendant, under the provisions of the city building ordinance, demanded an arbitration to determine whether or not the building could be repaired and rendered safe under the ordinance. The matter was submitted to arbitration in the manner provided in the ordinance; and in their report made to the city engineer the arbitrators agreed "that there is no necessity whatever for taking down any portion of the building," but reported that certain repairs were necessary and should be made. Upon receipt of a copy of the arbitrators' report, defendant at once wrote plaintiff advising him of the requirements of the arbitrators as to repairing the building, and, referring to the covenants of the lease. regarding the lessee's obligation to repair, notified him to make at once the repairs required. Those repairs were not made. Subsequently, and during the life of the lease, a portion of one of the walls of the building collapsed owing to an excavation made into the adjoining land in the course of building operations thereon; whereupon, and almost immediately, the defendant, although insisting that he was under no obligation to do so, commenced to repair the wall, saying that he felt under all of the circumstances of the case that perhaps it would be asking too much of the tenant to make this particular repair. Nevertheless the plaintiff, without notice to the defendant, abandoned the premises, and moved into a building which he had recently caused to be erected.

The covenants to repair above set out bound the tenant, we think, under the general rule adopted in this state, to make the repairs, and he was not entitled because of the condition of the building to vacate the premises. The effect of such

covenants is thus stated by Tiffany, in his work on Landlord and Tenant, at section 116 (d): "An express covenant by the tenant to repair or keep in repair binds him to repair although the injury were accidental and in no way caused by his negligence. The express covenant to repair binds the covenanter to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident or act of a stranger. . . . There are *dicta* and perhaps one decision to the effect that the tenant is not bound to rebuild in case of such destruction by the act of God, or of destruction by the public enemy. Such a view can be supported only on the theory that the covenant to repair in view of the circumstances under which it was made, is not in the particular case to be construed as extending to injuries so caused, and the authorities show that such a limited construction is not ordinarily placed upon the covenant. The tenant is liable, under the covenant to repair, in case the premises are injured by third persons, or even if the premises fall on account of defects existing therein at the time of the lease."

To the same effect is Taylor on Landlord and Tenant, ninth edition, section 364.

Our own supreme court, stating the effect of a general covenant to repair in the case of *Polack* v. *Pioche*, 35 Cal. 416, 422, [95 Am. Dec. 115], used the following language: "If the tenant desires to relieve himself from damages resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant."

In a Texas case in many respects like the one at bar, the lease contained the following covenant: "It is expressly agreed and understood that the said Martinez [the tenant] shall himself bear all the expenses of repairing or improving the premises hereby leased during his occupancy of same." There also the only exception to the lessee's obligation was a covenant on the part of the lessor to make needed repairs to the roof. The building had been condemned by the municipal authorities of Dallas and ordered demolished. Subsequently a resolution was passed by the city council ordering the building to be repaired under the direction of the city engineer. The tenant refused to make the repairs, and they were made at the expense of the landlord, who brought suit

to recover the amount expended by him. The court, holding that the landlord was entitled to recover the cost of the repairs, used the following language: "The contract shows that the defendant obligated himself to bear all expenses of repairing or improving the property during his occupancy. . . . This would obligate him to bear the expenses of everything falling within the meaning of repairs or improvements necessary during the term, except as by the other provisions of the contract he may have been released from such liability. . . . The work which Thompson caused to be done was for the purpose of restoring the house to a sound state or a safe condition, and this was the repairing the expense of which the defendant promised to pay." (*Martinez* v. *Thompson*, 80 Tex. 568, [16 S. W. 334].) To the same effect is *Markham* v. *David Stevenson etc. Co.*, 104 App. Div. 420, [93 N. Y. Supp. 684].

In a case in New York the obligation of the tenant was held to extend even to the repair of dilapidations caused by defects in the construction of the building. In that case the lessee covenanted "to make such improvements as he might require, also make all necessary repairs and to keep the same in tenantable order at his own cost." There, as here, the lessee abandoned the premises, claiming that the same had become untenantable because of the settling of the rear wall owing to the original defective construction of the foundation. The court, sustaining the right of the landlord to recover the money expended by him in making certain repairs, held that: "As the covenant was absolute to make all necessary repairs and keep the premises in tenantable order, and no fraud on the part of the landlord having been shown, defendant was bound to make the repairs irrespective of the cause of the defect, and defendant having abandoned the premises without making the repairs the landlord had the right to make them and recover the expense." (*Lockrow* v. *Horgan*, 58 N. Y. 635.)

Section 1932 of the Civil Code has no application to the facts of this case. That section provides: "The hirer of a thing may terminate the hiring before the end of the term agreed upon. . . . When the greater part of the thing hired, or that part which was and which the letter had at the time of the hiring reason to believe was the material inducement to the hirer to enter into the contract, perishes from any other

cause than the want of ordinary care of the hirer.'' That section is not applicable to a case where the lease itself expressly provides who shall make the repairs; and even if it could be held that this section does apply, the evidence wholly fails to show that the greater part of the thing hired, or that part which was the material inducement to the hirer, was destroyed. We think, therefore, that from no aspect of the case was the tenant relieved from the obligation to pay the agreed rent.

The judgment is reversed.

Lennon, P. J., and Richards, J., concurred.