KOFORD, P. J.
 

 Plaintiff recovered judgment for damages for breach of a covenant of a ten-year lease by which .defendant agreed to keep the leased premises in good repair and to yield up said premises upon the termination of the lease in good condition and repair, loss by fire and ordinary wear and tear excepted. The court found in response to the issues presented that “said defendant has allowed said building and premises to become and remain in a condition of impair, waste and deterioration by reason of the failure of said defendant to paint said building and the fire escapes thereon and to paint out signs placed by the defendant upon said building and the failure to paint the sprinkling pipes located within and the water tanks connected therewith located upon said buildings and the failure of said defendant to paint the walls within said buildings and to repair the floors of said buildings and upon the termination of said lease the failure of the defendant to remove iron pipes and iron pins protruding from the surface of the cement floors of said buildings and the failure of the defendant to cover or fill in holes cut by the defendant in the concrete floors of said buildings; by the defendant removing and failing to replace window sashes in said buildings and by breaking and failing to replace window glass in the windows of said buildings and by breaking
 
 *612
 
 and otherwise destroying and failing to repair the plaster broken and destroyed upon and in the walls, ceilings and columns within said buildings; by failing to repair boilers, elevators and parts of the boilers and elevators located in and forming a part of said demised premises.”
 

 The precise clause of the lease involved here is as follows: “And that said party of the second part will keep said premises in good repair, replacing all broken glass with glass of the same size and quality of that broken and will keep said premises and appurtenances and all things connected therewith, including the adjacent alleys in a clean and healthy condition and good repair according to the City Ordinances of the City of Los Angeles, and the direction of the proper public officers during the term of this lease at their own expense; and upon the termination of this lease, in any way, will yield up said premises to said party of the first part in good condition and repair, loss by fire and ordinary wear and tear excepted.”
 

 Appellant assumes that this clause is to be treated as one covenant and not as two distinct ones separated by the semicolon. Assuming this to be true, without so holding, then “ordinary wear and tear excepted” is a qualification of the tenant’s covenant to “keep in repair” as well as of his covenant to “yield up in good condition and repair.”
 

 It is appellant’s contention that certain of the items charged to it by the judgment appealed from have the effect of making it responsible for repairs made necessary only by ordinary wear and tear. These items are: 1. Item of $40, ’ cost of a short attempt to remove the tenant’s advertising sign painted upon the side of the leased building;
 
 2.
 
 Patching plaster where broken from interior of building, $39.35; 3. Repairing two elevators, $120 and $226.32 respectively; 4. Tinting discolored walls, $488; 5. Painting metal work and sills on front of building, $190; 6. Scraping and painting pipes and tanks of sprinkling system, $648. In order to get a sense of proportion it should be stated that the rent reserved was six per cent per annum upon the cost of the buildings ($160,000), and five per cent per annum upon the agreed valuation of the land ($85,000), making $13,850 per year.
 

 The first item can hardly be said to have been occasioned by ordinary wear and tear as the sign was put there
 
 *613
 
 by the tenant. As to the second and third items there was evidence tending to show that the state of impair was caused by the abuse and neglect of the tenant by removing shelving from the plastered walls in a careless manner and by operating the machinery of the elevator without sufficient lubrication. This evidence, so far as concerns the elevators, is not so clear as to amount to demonstration, but our examination of it convinces us that the court’s finding in this respect is not unwarranted by the evidence. As to the fourth item, there was evidence that the walls were “badly stained,” “quite discolored,” “needed ealcimining,” but no especial cause of this is pointed out by either respondent or appellant except that at least part of the discoloring was caused by the lines of shelving used by the tenant and removed it when surrendering. As to the fifth and sixth items, the evidence was that these metal parts had never been painted during the ten years of the tenant’s occupancy; that they were covered with rust and scale and badly in need of painting, not merely for decorative purposes, but for the purpose of properly protecting and preserving the metal. There was testimony that the metal parts on the outside of the building should be painted at least every four or five years. Do these repairs fall to the duty of the tenant or are they excepted by the clause ordinary wear and tear? The few authorities cited in the briefs seem to us to fall short of giving any satisfactory test for determining the question. Our examination for authorities has disclosed several comprehensive collections of authorities. They are 95 American Decisions, 115, at 121, under
 
 Polack
 
 v.
 
 Pioche,
 
 35 Cal. 416, 64 L. R. A. 648, and 45 A. L. R. 12.
 

 All of the items of repair here are within the tenant’s duty under a general covenant to keep in repair without qualification, according to the earlier decisions.
 
 (Polack
 
 v.
 
 Pioche, supra; Egan
 
 v.
 
 Dodd,
 
 32 Cal. App. 706 [164 Pac. 17].) With respect to painting a distinction has sometimes been made between painting for decoration and painting for protection and preservation of the building. The latter has uniformly been held to be the tenant’s duty and the former only when the painting is reasonably necessary to make the building tenantable, having regard^ to the purpose for which it is to be used, its location and
 
 *614
 
 the usual requirements of the class of tenants using such premises. (Jones on Landlord and Tenant, see. 401.)
 

 Many of the early decisions interpreting covenants of leases applied such a strict legal meaning to the language used that unexpected hardships often resulted. In the case of
 
 Realty & Rebuilding Co.
 
 v.
 
 Rea,
 
 184 Cal. 565, 575 [194 Pac. 1024], it was held that leases should be interpreted no more technically than other contracts; that more attention should be given to the rule of interpretation of contracts declared in Civil Code, section 1644, which states that words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning.
 

 Applying this rule of interpretation, together with other code provisions applicable to the question now before us, we reach the conclusion that the items of repair charged against the tenant by the trial court properly fall within the duty of the tenant under the terms of the lease. The hirer of a thing must use ordinary care for its preservation in safety and good condition (Civ. Code, sec. 1928) and repair injuries and deteriorations caused by his failure to do so (Civ. Code, sec. 1929). The buildings here leased were new—built expressly for the tenant. The term of the lease was ten years. A tenant who sits by for ten years and allows the metal parts of the building to decay for lack of a renewal coat of paint is not using ordinary care for its preservation. The exception of ordinary wear and tear contemplates that deterioration will occur by reason of time and use in spite of ordinary care for its preservation.
 

 Herboth
 
 v.
 
 American Radiator Co.,
 
 145 Mo. App. 484 [123 S. W. 533], relied on by appellant, did not contain, as here, a covenant to keep in good repair. The part of the covenant there held to be binding upon the lessee under a two-year renewal of an old lease was to repair any damage done to the buildings by negligence of its employees, careless usage, or any other cause. The phrase “auy other cause” was interpreted in connection with the surrender clause as excepting “natural wear and decay.” The rusted guttering and leaky roof there mentioned apparently were of a nature which required reconstruction rather than protection and were not of .such a nature as
 
 *615
 
 to have been caused by neglect during the two-year renewal lease to which period the defendants’ responsibility was confined by other principles considered in the decision.
 

 The court also found against the special defense of accord and satisfaction pleaded in the answer. By this plea defendant claimed that the plaintiff had agreed to waive his claim for damages in return for the defendant’s leaving in and on the leased premises, when yielding possession at the end of the term, certain personal property as agreed compensation for such damages. Appellant also claims this finding is unsupported by the evidence. Toward the end of the lease term plaintiff voiced his claim for damages. Defendant disputed some of the claim and admitted parts of it. Defendant several times offered to leave on and in the premises for the plaintiff certain property, particularly certain electric wiring equipment installed by defendant in the building, in full satisfaction of the plaintiff’s claim for damages. This offer was apparently never flatly and directly rejected by the plaintiff. His. reply was that such personal property constituted a part of the realty and, therefore, could not be removed by the tenant either legally, or, on account of the method of its installation, profitably. Plaintiff also replied that he did not want such personal property and that the new tenant would install his own. Finally, toward the very end of the term, on December 27 or 28, 1921, according to the testimony of Mr. Brownstein of the defendant company, a Mr. McKee, an employee of the plaintiff, in response to Brownstein’s request for a final answer, stated that he had seen the plaintiff and, without reporting what the plaintiff had said, told Brownstein “to leave the personal property there and that the proposition would be all right as mit.linp.rl by me (Brownstein).” Although this Mr. McKee was a witness at the trial he was not asked the direct question whether he had made this statement to Brownstein, and on objection of counsel for defendant was not permitted to state what the plaintiff had told him to report to the defendant. He did, however, testify to conversations with Brownstein. One of these was evidently the same one as that said by Brownstein to have occurred on December 27th or 28th, although McKee said it occurred on January 5, 1922. It follows: “I said, ‘Mr. Brownstein, I have just
 
 *616
 
 seen Mr. Connell and we do not want yon to take the material that you referred to out of the building’ and he said that he would not.” Appellant claims the above does not present a conflict of evidence.
 

 There was also testimony that defendant during the last week of the term was endeavoring to sell this personal property to one of the new tenants and to several others. Brownstein testified that he ceased trying to sell after receiving word from McKee as above stated. That date, according to his testimony, was December 27 or 28, 1921. One of the new tenants testified that certain conduit, drops, wiring, and fixtures were purchased by him from the defendant for $262.50 on January 7, 1922, together with other personal property, aggregating $771.25. Brownstein denied selling any. There was also testimony that Brownstein, on being presented in March, 1922, with a bill for damages claimed by plaintiff, declined to pay, stating only that the material left by defendant practically offset all the claims. Brownstein denied hearing anything about the bill for damages from December 27 or 28, 1921, until February, 1923.
 

 There are, therefore, very sharp conflicts in the testimony in some of the important details of the matters testified to by Brownstein. The trial court evidently did not believe Brownstein’s statement that McKee had said to him that “the proposition would be all right,” but evidently believed that McKee had only said not to take the material out of the building—meaning thereby that the plaintiff insisted that defendant had no right to take it out. We hold, therefore, that the finding of no accord and satisfaction is based upon conflicting evidence and is not unsupported within the meaning of familiar rules binding upon appellate courts.
 

 The evidence that plaintiff’s engineer told the new tenant that certain wiring and conduits would remain is emphasized by appellant, but this testimony is just as consistent with plaintiff’s claim that they must remain as a matter of right as with defendant’s claim that they were to remain pursuant to the claimed accord and satisfaction.
 

 The judgment is affirmed.
 

 Sturtevant, J., and Nourse, J., concurred.