[Civ. No. 3391.   Fourth Dist.   Nov. 29, 1945.]

DUDLEY H. HOSEA, Respondent, v. CHARLES
BRATHER, Appellant.

Ruel Liggett for Appellant.

Chester A. Smith for Respondent.

GRIFFIN, J.—Action for unlawful detainer and damages. Defendent and appellant Charles Brather, by written lease dated August 25, 1939, leased, from Bertha Lawrence, the Raleigh Apartment House in San Diego, comprising about 18 apartments, and its furnishings and equipment as inventoried. He went into possession, used one apartment for his own living quarters and rented the balance to tenants. The lease was subsequently extended so as to expire August 31, 1945. Bertha Lawrence, on November 28, 1944, sold the property and assigned the lease to plaintiff herein. The lease, among other provisions, contained the following: "The lessee shall . . . keep and maintain in good order, repair, and condition, at his own expense, the interior of said apartment house, and agrees to flush the plumbing connection with the sewer at least every ten days." The lessor agreed to make all *major* repairs to the plumbing *in the building*. The lessee agreed to "keep and maintain all the herein described personal property, equipment, furniture and furnishings, included in the leased premises, in good condition and repair during the period of this lease . . . and surrender the same to the lessor at the expiration of the period of this lease in as good condition as said property shall have been at the time of the commencement of the term hereof, except for the ordinary use and natural wear"; to "promptly repair any of said property that may become damaged, broken or so worn as to become unfit for the purpose intended"; to "replace the same with other property of the same kind and character, and of at least equal in value as the prop-

erty so replaced; . . . that during all of said term said premises and every part thereof shall be kept by the lessee at his own expense in a clean and wholesome condition and in compliance with all health regulations''; that if lessee fails to perform any condition of the lease and continues to do so for ten days after service of notice of such default, lessor may terminate the lease.

The trial court found that the provisions of the lease had been breached by the lessee, particularly in reference to the failure of the lessee to keep and maintain in good order, repair and condition, the interior of the apartment house and to flush the plumbing connection at least every ten days during the term of the lease; that on December 20, 1944, the Board of Health condemned the premises as unsanitary and unfit for human habitation, and notice thereof was served upon defendant and posted on the property; that defendant did not repair all damaged or broken furniture as required by the lease nor did he replace all worn-out furniture and furnishings; that plaintiff did, on January 5, 1945, serve upon the defendant a written demand requiring that he keep and maintain the interior of the premises in good order and condition, that he flush the plumbing connection with the sewer every ten days, and that he repair any damaged, broken or worn-out furniture or furnishings and that unless he did so within ten days the lease would be canceled and terminated; that the defendant did not, since the receipt of the notice, keep the interior of the premises in good order, repair and condition, and did not replace all broken or worn-out furniture. The court then found that plaintiff had been injured by the acts and omissions of defendant, and was damaged as follows: $250 for failure to maintain the plumbing in good condition, and $500 additional for failure to replace damaged, worn-out, or missing furniture and furnishings. The court rendered judgment for restitution of the premises ''and such portions of the furniture or furnishings therein as are listed or inventoried in the lease and were in existence at the time of the filing of the complaint for money damages,'' totaling $750.

The apartment building was built in 1890. It consisted of a frame construction which was ''sagging down'' in places. In 1941 the Health Department condemned it and thereafter some renovation was made. During the occupancy of the lessee, constant trouble was had in reference

to the plumbing and sewer stoppage. Both lessee and lessor were fully acquainted with this condition, and it was this condition which brought about the clause in the lease requiring lessee to flush the sewer at least every ten days during the term of the lease. On several occasions the sewage backed up in the pipes and overflowed through a leak or break in the sewer connecting pipe, which break was just under the surface of the dirt in the back yard and at the entrance to the back steps. The break had been covered with a cement cap. The health inspector was called on several occasions and found that at least on one occasion the sewer had been stopped up for two days and that the sewage had been running out of the break into the neighbor's yard sufficiently to create a nuisance. He testified that he orderd Brather to repair the pipe either with a Barrett or a "Y" clean-out, but that on December 19, when he returned to the property, Brather had not taken care of anything outside of fixing a few windows. He testified that he found a hole in the bathroom large enough for a cat to crawl through; that he condemned the property "mostly for the plumbing conditions, and partly because of lack of sanitation and repairs and as "unfit for human habitation." A written notice of this fact was given to Brather and a copy thereof posted on the property. There was other corroborating evidence in respect to the plumbing and unsanitary conditions. Defendant offered evidence which merely created a conflict with that testimony. Without relating the evidence in full, suffice it to say, there was sufficient evidence, if believed by the trial court, to support the finding that certain conditions of the lease were, as a consequence thereof, breached by defendant. (*Egan* v. *Dodd*, 32 Cal.App. 706 [164 P. 17]; *Realty & Rebuilding Co.* v. *Rea*, 184 Cal. 565 [194 P. 1024]; *Connell* v. *Brownstein-Louis Co.*, 86 Cal.App. 610 [261 P. 331]; Code Civ. Proc., § 1161, subd. 4.) That finding cannot be disturbed on appeal. (*Waer* v. *Waer*, 189 Cal. 178 [207 P. 891].)

It should be here noted that the lessee paid the last four months of rent under the lease, as extended, in advance. The sum paid was $460 for the months of May, June, July and August, 1945. This action was commenced on February 8, 1945, and was decided on May 2, 1945. Since this appeal was perfected the lease has otherwise expired by lapse of time. It was conceded by both counsel that in August, 1945,

defendant, tenant thereunder, vacated the premises and delivered them over to plaintiff. The portion of the judgment ordering possession of the premises delivered over to plaintiff would be ineffectual and would serve no useful purpose. Any question as to the validity of that order, therefore, has become moot. The question raised by defendant as to the right of plaintiff to evict the tenant, lessee, from an apartment house containing 18 apartments, where he occupies but one apartment therein, under section 6 of Rent Regulations for Housing, issued by the Office of Price Administration under date of June 1, 1943, published in Federal Register as Title 32, chapter XI, part 1388, section 1388.1181, 8 F. R. 7322, also became moot. (*Diederichsen* v. *Sutch,* 47 Cal.App.2d 646 [118 P.2d 863] ; *Estate of McSwain,* 176 Cal. 287 [168 P. 117].)

We will therefore limit our discussion to the question of damages awarded by the court. It allowed $500 for ''failure to replace damaged, worn-out, or missing furniture and furnishings in said premises.'' The right to award such damages is given under section 427, subdivision 2, and section 1174 Code of Civil Procedure, which latter section provides in part that the court shall assess the damages occasioned to the plaintiff by any unlawful detainer, alleged in the complaint and *proved on the trial.* (*Nathan* v. *Dierssen,* 164 Cal. 607 [130 P. 12].) We have carefully examined the entire record in relation to the proof of damage. The evidence produced by plaintiff on the subject was a copy of the lease and attached thereto was an itemized inventory of each room, which was taken at the time of the execution of the lease. No value of the several items was expressed therein. Counsel for plaintiff asked plaintiff, while on the stand, what it would cost to replace the broken and missing furniture and furnishings ''based upon Mr. Brather's testimony alone.'' The trial court properly sustained an objection to the question on the ground that it was indefinite from Brather's testimony just what furnishings were missing. The trial court remarked: ''I cannot tell what is missing at all, so the objection will be sustained.'' Counsel made no further endeavor to establish the value thereof or damage suffered, if any. The court refused to view the premises. The evidence as to what furnishings were missing, damaged, or worn out, is confusing. It cannot be ascertained from the record what articles were actually missing or what damage plaintiff suf-

fered, if any, for failure to replace such furnishings. It is completely devoid of any evidence fixing or establishing their monetary value or the amount of pecuniary damage that resulted from failure to replace them. The evidence does not support the finding that plaintiff was damaged, in this respect, in the sum of $500. (*Erreca* v. *Meyer*, 142 Cal. 308 [75 P. 826]; *Donovan* v. *Aetna Indemnity Co.*, 10 Cal.App. 723 [103 P. 365]; *Brown* v. *Johnson*, 45 Cal. 76; *De Thomas* v. *Witherby*, 61 Cal. 92 [44 Am.Rep. 542]; 5 Cal.Jur. 200, §§ 33-35, et seq.)

The portion of the findings and judgment allowing $250 damages for failure to maintain the plumbing in good condition does have some evidentiary support. Plaintiff testified that he was a plumbing contractor by trade; that he was familiar with the cost of such repairs; that he thoroughly inspected the premises; that had defendant thoroughly flushed the sewer disposal pipe as agreed upon in the lease, the plumbing trouble would have been eliminated; that to put the plumbing back in condition would cost "perhaps five or six hundred dollars." The amount allowed by the court ($250) for this damage is supported by the evidence.

The portion of the judgment allowing total damages in the sum of $750 is therefore modified and the total damage is reduced to $250. The judgment is affirmed as modified. Each party to pay his own costs on appeal.

Barnard, P. J., concurred.