## MARY POLACK v. ALFRED PIOCHE.

COVENANT OF TENANT TO REPAIR.—A general covenant of the tenant to repair the demised premises is binding upon the tenant under all circumstances, even if the injury proceeds from the act of God, from the elements, or from the act of a stranger.

IDEM.—If the tenant desires to relieve himself from liability for injuries resulting from any of said causes, he must except them from the operation of his covenant.

ACTS OF GOD.—Those acts are to be regarded, in a legal sense, as the acts of God which do not happen through human agency, such as storms, lightnings, and tempests. If it appears that an injury to the demised premises has been sustained in any way through the intervention of man, it is not the act of God.

DAMAGES BY THE ELEMENTS.—The elements are the means through which God acts, and "damages by the elements" are damages by the act of God.

WHAT DAMAGES TENANT BOUND TO REPAIR.—If the embankment of a natural reservoir, which is filled with water by unusual rains, is broken by a stranger, so that the demised premises are injured by the water, the injury is not the act of God or of the elements, and the tenant is bound to repair, even if "damages by the elements or acts of Providence" are excepted from his covenant.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 17th day of October, 1859, the plaintiff demised to the defendant, for the term of three years, a residence and tract of land on which the same was built, in the City of San Francisco, on the road leading from the Mission Dolores to the San Souci, receiving therefor a monthly rent of one hundred dollars, payable monthly, in advance. The defendant recovered judgment, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Jarboe & Harrison*, for Appellant.

The finding as a fact that some persons interfered with the embankment of the reservoir, and that through their agency said embankment gave way, and the waters came on to the land in question, establishes the fact that the damage done was not the result of natural causes alone, but was produced in part by human agency, and not solely or proximately by the elements or act of God.

The expression "damages by the elements," or "act of God," words of similar import as used in the lease in this case, are of familiar occurrence, and in an attempt to discover a definition of their meaning, we find sufficient authority to guide the understanding and determine the judgment beyond a reasonable doubt.

By the term "element" in the lease, is meant earth, air, fire, water; but to enable the defendants to claim for damages by these elements, the earth must be convulsed, the lightning must kindle the fire, the air must blow in tempests or tornadoes, and the water must come in waterspouts or sudden irruptions of the sea, breaking by its own force over its barriers. These are, we apprehend, what is meant when damages by the elements are spoken of—ravages occasioned by the forces of nature, uncontrolled and unaided by the hand of man; and this is what the books mean by "the act of God."

These phrases refer to any accident produced by purely physical causes, which are inevitable, and which are entirely independent of any human agency. The expression "act of God" denotes natural accidents, and not accidents arising from the negligence of man. (Story on Bailments, Secs. 511, 489, 25.) A leading English case on this subject is *Forward* v. *Pittard*, 1 Term R. 31, where Lord Mansfield says "the act of God means something in opposition to the act of man."

The rule is laid down by the Court in *McArthur* v. *Sears*, 21 Wend. 196, that although the delusion by which one be

baffled, the force to be overcome be irresistible, yet if it be the result of human means, the loss is not occasioned by the act of God, the carrier is responsible. This case is justly regarded as a leading one among American authorities, and the principles there enunciated have never been and cannot be controverted.

The expression, "act of God," does not denote accidents arising from the fault or negligence of man. (Abbott on Ship., marg. p. 382; see, also, Smith's Leading Cases, 315, and cases there cited; see, also, Edwards on Bailments, 455; 456.)

Again, in *Elliott* v. *Rossell,* 10 Johns. 11, it was held that the question as to whether a given casualty results from the act of God, turns on the question as to whether it occurred through the interposition of man.

The act of God must be the sole and proximate cause of the loss. (*Merritt* v. *Earl,* 29 N. Y. 115; 1 Parsons on Con. 635; Story on Bailments, Sec. 517.) If the act of God or the elements would not have produced the injury alone and disconnected with human agency, it is no excuse. (*Turner* v. *Tuolumne Water Co.,* 25 Cal. 403.)

It is a general principle, says Kent, that the tenant, without some special agreement to the contrary, is responsible to the reversioner for all injuries amounting to waste done to the premises during the term, by whomsoever the act may have been committed, with the exception of the act of God, public enemies, and the reversioner himself. (4 Kent's Com., marg. p. 77.) This rule we are contending for is also laid down in *Cook* v. *Champlain Trans. Co.,* 1 Denio, 104. This case holds the tenant responsible to the landlord for the waste, by whomsoever it was committed. (See, also, 1 Taunton, 198.)

*John B. Felton,* and *Theodore H. Hittell,* for Respondent.

The damage was a damage by the elements. The " elements," in popular signification, mean earth, air, fire, and

water. Damages by the elements are damages by earth-quakes, landslides, winds, storms, lightnings, conflagrations, waterspouts, floods, inundations, and so on, without reference to the remote causes which may set them in motion. There is a great difference between damages by the elements and damages by the act of God. Though nearly every damage by the act of God is a damage by an element, yet there are many damages by the elements which do not come within the definition of acts of God. In the very lease in question there is a distinction recognized between damages by the elements and damages by acts of Providence; and the exemption is made broad enough to cover any case *whatever* of damage by the elements *or* acts of Providence.

The great battle which the learned counsel for appellant wages is upon the expression: "damages by the elements." His mistake is in confounding this expression with the "acts of God." His argument is that because as he claims human agency has at some remote stage of the injury intervened, therefore the damage is human, and not of the elements. But all his theory and all his cases turn upon the interpretation of "acts of God," which convey a meaning altogether different from "damages by the elements." We need only refer to the great mass of insurance cases which distinguish between "acts of God" and "perils of the sea"—an expression more analogous than any other to "damages by the elements." The "acts of God" must be acts independent of any human agency, however remote. "Perils of the sea" means only the proximate cause of damage, and does not look to the remote cause. "Damages by the elements" is much broader than either of the others, and refers to any of those great, controlling, irresistible powers which a child may set in motion and Titans cannot oppose. If the elements work the damage, it is they that are responsible for it, not the remote, unseen, inappreciable force, which may have set their rage in motion. Men are not presumed to covenant against remote causes, because of the insignificant cause as compared with the irresistible power it may invoke. Hence

the match of the incendiary is not held to be the cause of the damage by fire, and the rat which opens the door to the sea is not responsible for his mischief. In insurance cases even the negligence of the party insured or of his servants does not prevent a recovery, so strongly does the law fix its eye only upon the great, present, overwhelming power which destroys. (See *Patapsco Ins. Co.* v. *Coulter,* 3 Pet. 235; *Waters* v. *Merchants' Louisville Ins. Co.,* 11 Pet. 222; *Columbia Ins. Co.* v. *Lawrence,* 10 Pet. 516; *General Mutual Ins. Co.* v. *Sherwood,* 14 How. 365; *Mathews* v. *Howard Ins. Co.,* 1 Ker. 22; *Gates* v. *Madison Co. Mutual Ins. Co.,* 1 Seld. 478; *Nelson* v. *Suffolk Ins. Co.,* 8 Cush. 503; *Hall* v. *Wash. Ins. Co.,* 2 Story, 176; *St. John* v. *American Mutual F. & M. Ins. Co.,* 1 Duer, 381; *Plaisted* v. *Boston and Kennebec Steam Nav. Co.,* 27 Maine, 135.)

The foregoing considerations sufficiently dispose of the real question involved in this case; but before closing we desire to notice the assumption of appellant, that the lessee was bound to rebuild and liable for every contingency except the acts of God. He does not pretend that the lease contains any provisions of that kind; but he assumes, because some old English Judges compared the liability of a tenant holding by act of law to that of a common carrier, that therefore the lessee here was liable in the same manner. But even under the old common law there was a very marked distinction between tenancies created by act of law and tenancies created by act of the parties. Kent, in the clause cited by the appellant (4 Kent's Com. 77), was speaking of the old rule of law in relation to tenancies created by act of law—and the reason for so great a degree of strictness in tenancies of that species was the protection of the reversioner, who not being, so to speak, a party to the lease, could not impose conditions against waste. But the law in relation to tenancies created by act of the parties was always very different. Only a few pages further down (78 and 82) Kent says that " at common law no prohibition against waste lay against the lessee for life or years, deriving his interest from the act of the party,"

and that the "doctrine of permissive waste has never been introduced and carried to so great an extent in the common law jurisprudence of the United States as in the old law of England."

In *Gibson* v. *Wells*, 1 N. R. 290, which was an action on the case against a tenant at will for permissive waste, the Court held that the action would not lie for permissive waste, although it would have lain for willful waste. And in *Horsefall* v. *Mather*, Holt's N. P. C. 9, it was shown that a tenant is not bound to rebuild or repair after a fire. In *Leach* v. *Thomas*, 7 Car. & P. 327, the Court said : "As the defendant was tenant from year to year only, he was not bound to do substantial repairs; he was only bound to keep the premises wind and water tight."

By the Court, SANDERSON, J. :

This is an action to recover damages for the nonperformance of a covenant to repair. By the terms of the covenant "damages by the elements or acts of Providence" are excepted from its operation.

The case was tried by the Court below without a jury, and has been brought here upon the findings only, it being claimed that the conclusions of law, which were in favor of the defendant, are erroneous.

The facts upon which the case turns were found by the Court below substantially as follows: During the term the demised premises were damaged to the amount of six thousand dollars by "a torrent of water overflowing and sweeping through" them. The torrent was produced by the accumulation of waters from the unusual rains of 1862, which were collected in a natural reservoir in the vicinity of the premises, upon lands of some other person than the plaintiff or defendant, and separated from the demised premises by lands in the possession of and belonging to persons other than the plaintiff or defendant. In ordinary seasons the natural embankment of the reservoir was sufficient to

confine the water, or to prevent it from overflowing or break-ing through, but was not sufficient for that purpose in the Winter of 1862, which was remarkable for extraordinary rains and floods. Prior to the torrent which caused the damages in question, however, the embankment had been strengthened by the labor of the adjacent land owners, among whom was the defendant, so as to make it sufficient to withstand even the rains and floods of that Winter; but "*some person or persons* unknown to the defendant, and with-out his knowledge or consent, interfered with the natural embankment of the reservoir, and *through their agency and their interference* the embankment was made to give way, and the whole body of water in the reservoir was suddenly precipitated upon the premises," causing the damages in question.

A general covenant to repair is binding upon the tenant under all circumstances. If the injury proceeds from the act of a stranger, from storms, floods, lightning, accidental fire, or public enemies, he is as much bound to repair as if it came from his own voluntary act. Such has been the set-tled rule since the time of Edward III. (2 Platt on Leases, 186, 187, and cases there cited.) If the tenant desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant. (Id. 186, 187.) So the defendant in the present case is liable, unless, in the language of the exception contained in his covenant, the damages were caused by "the elements or the acts of Providence."

What acts are to be regarded in the legal sense as "acts of God" is well settled. Upon that question the case of *For-ward* v. *Pittard*, 1 T. R. 27, is a leading authority. The plaintiff's goods, while in the possession of the defendant as a common carrier, were destroyed by fire not caused by light-ning or the negligence of the defendant. The question was, whether the fire was, in a legal sense, caused by the "act of God." The Court of King's Bench ruled that it was not,

and Lord Mansfield said: "Now, what is the act of God? I consider it to mean something in opposition to the act of man; for everything is the act of God that happens by his permission; everything by his knowledge,   *   *   *   such acts as could not happen by the intervention of man, as storms, lightnings, and tempests." To the same effect are all the cases. (*McArthur* v. *Sears*, 21 Wend. 190; *Ewart* v. *Street*, 2 Bailey, 157; *Fish* v. *Chapman*, 2 Geo. 349; *Merritt* v. *Earle*, 29 N. Y. 115; *Turner* v. *Tuolumne Water Co.*, 25 Cal. 403.) The expression excludes the idea of human agency, and if it appears that a given loss has happened in any way through the intervention of man, it cannot be held to have been the act of God, but must be regarded as the act of man.

Can a different rule be applied to the interpretation of the expression "the act of the elements?" Is it more comprehensive than the former? Does it include acts which the former does not? The answer is not material to the present purpose; for be that as it may, for the purpose of determining the cause of a particular event, the same test must be resorted to in the one case as in the other. If an act to which human agency has in any way contributed, cannot be considered as the act of God, but must be held to be the act of man, how does it become less the act of man if we substitute the elements in the place of God? The elements are the means by which God acts, and we are unable to perceive why "damages by the elements" and "damages by the acts of God" are not convertible expressions in the law of leases.

The act could not have happened in the one case more than in the other, had not the agency of man intervened. It follows that before an act can be considered the act of the elements it must appear that no human agency intervened, for if it did, the elements cannot be regarded as the cause, but only as the means. Had the waters in question broken through the embankment of the natural reservoir in which they had accumulated without the agency of man, the loss would have fallen within the exception contained in the

defendant's covenant. The case shows, however, that they would not have broken through the embankment but for the help of man. The damages in question were, therefore, caused by the act of some stranger. Against the acts of strangers the defendant might have protected himself by excepting them from the operation of his covenant. Not having done so, however, he is liable, as we have seen, by force of his covenant.

Upon the findings, the plaintiff is entitled to judgment for the sum of six thousand dollars. The judgment is, therefore, reversed, and the Court below directed to enter a judgment for the sum of six thousand dollars, together with the costs below and here.