[S. F. No. 8988.   In Bank.—December 27, 1920.]

REALTY AND REBUILDING COMPANY (a Corporation), Appellant, v. L. A. REA et al., Respondents.

[1] CORPORATIONS — STOCKHOLDER'S LIABILITY — STATUTE OF LIMITATIONS.—The liability of stockholders of corporations under section 322 of the Civil Code has its inception in the creation of the original liability of the corporation and ceases at the end of three years after said date.

[2] ID.—ASSIGNMENT OF LEASE TO CORPORATION—TIME OF CREATION OF LIABILITY.—Where a lease containing a provision that at the expiration of the three-year term the lessee might, by giving notice, elect to take a three-year extension, was assigned to a corporation without any agreement on the part of the assignee to be bound by the covenants of the lease, the liability of the corporation for the payment of the rent for the extended term was not created until it gave notice of the exercise of the option, and an action to enforce the liability of the stockholders commenced within three years thereafter is not barred by the statute of limitations.

[3] APPEAL—FINDINGS—EVIDENCE—PRESUMPTION.—Where on an appeal from a judgment there is no specification of insufficiency of evidence it must be assumed that the findings are supported by the evidence.

[4] CORPORATIONS—TRANSFER OF STOCK—RECORDATION UPON BOOKS— DUTY OF STOCKHOLDER.—While it is true that, as a general rule, the presumption that a person is a stockholder of a corporation as long as his name appears on the books as such is not conclusive, nevertheless an owner who claims to have transferred his stock cannot overcome the presumption of continued ownership, at least as to creditors of the corporation, without proof that he has done all in his power to have his name removed from the books and thus placed himself in the position of an involuntary record holder.

[5] LANDLORD AND TENANT—COVENANTS TO REPAIR—DUTY TO REBUILD DESTROYED PREMISES —APPEAL—SUFFICIENCY OF RECORD.—Where, in an action for breach of an alleged covenant to rebuild demised premises after destruction by fire, the plaintiff during the discussion of the motion for a nonsuit based on the ground that the covenants to repair did not require such rebuilding made a general offer of evidence supporting all of the averments of the complaint, which the court in granting the motion obviously considered sufficient to justify its consideration of the merits of the motion as

4.   Law governing transfer of corporate stock, note, **Ann. Cas.** 1917D, 959.

to the inadequacy of the covenants, it cannot be contended on appeal that a sufficient record for the consideration of the question, is not presented, because there was no proper offer of evidence to support the allegations of the complaint.

[6] PLEADING—PREMATURE COMMENCEMENT OF ACTION.—The plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be taken advantage of by the defendant.

[7] LANDLORD AND TENANT—COVENANT TO REPAIR—CONSTRUCTION OF LEASE—GENERAL COVENANT.—A covenant that lessees will repair the whole of demised premises at their own cost, and waiving all right to make repairs at the expense of the landlord as provided by section 1942 of the Civil Code, is a general covenant, and not one for such repairs only as are contemplated in sections 1941 and 1942 of the Civil Code.

[8] ID.—ENUMERATION OF PARTICLUAR ITEMS OF REPAIR—GENERAL COVENANT.—A covenant that lessees will keep in good order and repair at their own cost all buildings and structures, and the piping and plumbing thereof, and the sidewalks in front of the property, is a general covenant, the enumeration of the particular items not being intended to operate as a waiver of the obligation to make other repairs naturally comprehended in the covenant.

[9] ID. — COVENANT TO REPAIR — RESTORATION OF COMPLETELY DESTROYED BUILDINGS.—A general covenant to repair does not impose an obligation to rebuild structures completely destroyed by fire without the fault of the lessee, unless it clearly appears that the word "repair" was used in other than its ordinary and generally accepted meaning.

[10] ID.—SURRENDER OF PREMISES IN GOOD CONDITION—REPLACEMENT OF TOTALLY DESTROYED BUILDINGS NOT REQUIRED.—A covenant to surrender demised premises at the expiration of the term in as good condition as they were at the beginning does not require the replacement of a building totally destroyed by fire without the fault of the tenant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed in part, affirmed in part.

The facts are stated in the opinion of the court.

Charles S. Wheeler, John F. Bowie, Nathan Moran, A. A. Heer and Moran & Heer for Appellant.

A. E. Shaw and Bert Schlesinger for Respondent, A. Ruef.

LENNON, J.—The complaint in this action purported to state two causes of action, one for money claimed as rent and one for money claimed as damages for the breach of an alleged covenant to rebuild. The action was prosecuted against defendants Rea, Kehrlein, and Sullivan, the original lessees, against Fillmore Arcade Company, a corporation, the assignee of the lease, and against the remaining defendants as stockholders in the latter corporation.

The undisputed facts are these: On July 1, 1906, the original lessees accepted a lease of the premises in question. By this lease they obligated themselves to erect forthwith upon the demised land buildings of the approximate value of one hundred and fifty thousand dollars, and they further obligated themselves to pay the sum of three thousand five hundred dollars monthly as rent for the said premises for the period of three years. The lessees further agreed that at the expiration of three years from the commencement of the lease they would either surrender possession, together with all buildings constructed upon the premises, accepting one-half of the appraised value of said buildings, or, at their option, continue in possession under the lease for three additional years, paying as rent the sum of two thousand five hundred dollars monthly and surrendering all interest in the buildings to the lessor. The lease also contained certain covenants relative to repairs which will be considered in detail elsewhere in this opinion. On December 14, 1906, this lease was assigned to defendant Fillmore Arcade Company and accepted by it. On May 28, 1909, defendant company gave notice of its election to continue in possession for the additional three-year period. On May 29, 1911, the buildings on the leased premises were destroyed by fire. The rent was paid up to the first of June of that year. On August 7, 1911, this action was commenced to recover rent for the months of June, July, and August, and to recover damages alleged to have been sustained by reason of defendant company's refusal to rebuild.

Judgment was entered in favor of plaintiff and against the original lessees and against defendant Fillmore Arcade Company upon the first cause of action. It was held, however, that defendant company's liability to pay the rent had been created at a time over three years prior to the bringing of

the action, and that, therefore, the action was barred as to the stockholders of the corporation under the provisions of section 3 of article XII of the constitution of California and section 322 of the Civil Code. Upon the second cause of action, a nonsuit was entered against plaintiff on the ground that the lease was not properly to be construed as requiring the lessees to rebuild in case of the destruction of the building by fire.

This appeal has been taken by plaintiff from so much of the judgment as was adverse to it. Two questions are, therefore, presented for our consideration, the first relating to the time of the creation of the liability of defendant Fillmore Arcade Company to pay rent, the second relating to the construction of the covenants in the lease obligating the lessees to make repairs.

It is conceded that if the liability of defendant Fillmore Arcade Company to pay rent during the second three-year period was created when it accepted the assignment of the lease, the stockholders are subject to no liability in the present action, and that if, on the other hand, this liability was not created until the company exercised its option to continue in possession for this further period, the stockholders are liable herein for the rent demanded by plaintiff and appellant.

[1] In respect to the rights and liabilities of stockholders of a corporation there is a clear distinction between the creation of the liability of the corporation and the existence of a right of action against it. Upon this subject the cases uniformly hold that the liability of stockholders of corporations under section 322 of the Civil Code has its inception in the creation of the original liability of the corporation, and ceases at the end of three years after said date. (*Hunt* v. *Ward,* 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335] ; *Coulter etc. Dry Goods Co.* v. *Wentworth,* 171 Cal. 500, [153 Pac. 939] ; *Chambers* v. *Farnham,* 182 Cal. 191, [187 Pac. 732].) The determination of the time of the creation of the stockholders' liability in the instant case rests upon the recognized distinction between the nature of the liability imposed upon an assignee of a lease who takes possession under a bare assignment of the lease and that assumed by an assignee who, in addition to accepting an assignment of the lease, expressly agrees to be bound by the covenants of the assigned lease.

As stated by this court in *Samuels* v. *Ottinger,* 169 Cal. 209, 211, [146 Pac. 638] : "A lease has a dual character—it presents the aspect of a contract and also that of a conveyance. (Pollock on Contracts, 3d Am. ed., p. 531.) 'Consequently the lease has two sets of rights and obligations—one comprising those growing out of the relation of landlord and tenant, and said to be based on the "privity of estate," and the other comprising those growing out of the express stipulations of the lease, and so said to be based on "privity of contract." ' (Tiffany on Real Property, sec. 46.)" (See, also, *Brosnan* v. *Kramer,* 135 Cal. 36, [66 Pac. 979].) An occupant of real property who holds by virtue of a bare assignment of the lease and without entering into any contract, either with his assignor or the lessor, affirmatively binding himself to fulfill the covenants of the lease, is subject only to such obligations as he impliedly assumes by entry and taking possession of the leased premises. (*Salisbury* v. *Shirley,* 66 Cal. 223, [5 Pac. 104] ; *Bonetti* v. *Treat,* 91 Cal. 223, 229, [14 L. R. A. 151, 27 Pac. 612] ; *Baker* v. *Maier etc. Brewery,* 140 Cal. 530, [74 Pac. 22] ; *Lutton* v. *Rau,* 37 Cal. App. 429, [173 Pac. 1111] ; *Seventy-eighth Street etc. Co.* v. *Purssell Co.,* 166 App. Div. 684, [152 N. Y. Supp. 52].) The obligations thus imposed as the result of the creation of the relation of landlord and tenant are said to arise from "privity of estate" as distinguished from "privity of contract"; liability of this nature continues only during occupancy by the assignee and terminates upon reassignment. (*Bonetti* v. *Treat, supra; Lutton* v. *Rau, supra.*) Where, however, the assignee expressly agrees in writing to be bound by the terms of the lease, there arises, as distinguished from any obligation resulting from mere occupancy, a new and different obligation which is not dependent upon occupancy of the premises, but is based upon privity of contract. By virtue of this agreement, a contractual relation is established, whereby the assignee becomes liable upon and entitled to the benefit of all of the covenants of the lease as such. (*Chase* v. *Oehlke,* 43 Cal. App. 435, [185 Pac. 425] ; *Lopizich* v. *Salter* (Cal. App.), 187 Pac. 1075.)

It is an undisputed fact in the instant case that, neither at the time of the assignment of the lease to the defendant corporation, nor at any time subsequent thereto up to the time of the exercise of the option to extend the term of the

lease, was there any express agreement on the part of the assignee to be bound by the covenants of the lease. By the assignment of the lease, and until the exercise of the option to extend the term of the lease, any obligation of the corporation with respect to the premises in question was dependent upon mere occupancy under the assignment and arose solely by virtue of privity of estate.

The lease assigned to the defendant corporation contained a provision to the effect that, at the expiration of the three-year term, the lessee might, by giving notice, "elect to take a three years' extension of this lease at a monthly rental of twenty-five hundred ($2,500.00) dollars." The assignee elected to extend the term of the lease and, in May, 1909, served a written notice of election which contained the following statement: "This notice of election and intention is given under and upon and subject to all the terms and conditions in said lease contained." This express declaration that the parties were to be governed by the covenants of the lease, signed by the assignee and accepted by the lessor, definitely created and established a contractual relation between the lessor and the assignee and the covenants of the lease were made the measure of the rights and liabilities of the parties for the extended three-year period. It may be that, irrespective of the creation of a contractual relation, the liability of the corporation during the extended term arose upon its election to extend the term, inasmuch as, until that time, any liability for an extended term was entirely optional with the corporation. (*Chambers* v. *Farnham,* 182 Cal. 191, [187 Pac. 732].) It may be that the creation of a contractual relation between the lessor and assignee of the lease would be implied from the mere exercise of the option to extend the term of the lease, without any express adoption of the covenants of the lease. (*Probst* v. *Rochester Steam Laundry Co.,* 171 N. Y. 584, [64 N. E. 504].) It is unnecessary, however, for the purposes of this case, to determine whether or not it would have been possible for the assignee to elect to extend the term without creating a new liability, inasmuch as the parties expressly assumed a contractual relation at that time.

[2] The contractual liability for the payment of rent during the extended term was created at the beginning of the extended term or at the time of the exercise of the option, each of which was less than three years before the commence-

ment of the present action, and it is upon this contractual
liability upon the covenants of the lease that the present ac-
tion is brought. It follows that the stockholders are liable
for the rent sued for.

It then becomes necessary to determine the question of the
liability of the defendant A. Ruef, sued as a stockholder of
the defendant corporation. This defendant set up the de-
fense that he was not a stockholder at the time the liability
of the corporation was created, claiming that, in or about
December, 1908, he transferred and assigned all of his stock
in said corporation to one Henrietta Sittenfeld. The trial
court found that said defendant Ruef was not the owner of
the stock after December, 1908, basing its finding upon the
testimony of said defendant to the effect that he had deliv-
ered a duly indorsed certificate representing his shares of
stock to said Henrietta Sittenfeld and had requested the sec-
retary of the corporation to issue the stock to the transferee.
The court, however, further found that no transfer was, in
fact, ever made upon the books of the corporation and that
all of said shares have ever since remained on the books of
the corporation in the name of said defendant Ruef. Judg-
ment was rendered in favor of said defendant.

[3] In view of the fact that there was no specification of
insufficiency of evidence, we must assume that the findings
are supported by the evidence. The fact remains, however,
that the findings as made are not sufficient to support the
judgment in favor of Ruef. It is to be noted that this is
not a case where shares of stock have been issued without
authority in the name of a person who never assumed the
relation of a stockholder, as was the fact in the cases relied
upon by respondent Ruef. (*Welch* v. *Gillelen,* 147 Cal. 571,
[82 Pac. 248]; *Shattuck etc. Co.* v. *Gillelen,* 154 Cal. 778,
[99 Pac. 348]; *Shean* v. *Cook,* 180 Cal. 92, [3 A. L. R. 1042,
179 Pac. 185].) The defendant Ruef, having voluntarily ac-
quired the stock in his name, sought to transfer it and, under
section 324 of the Civil Code, the transfer is, in general, in-
effective except as between the transferrer and transferee,
unless the transfer has been recorded upon the corporation's
books. [4] It is true that, as a general rule, the presump-
tion that a person is a stockholder as long as his name ap-
pears on the books of a corporation as such, is not conclusive.
Nevertheless, an owner who claims to have transferred his

stock cannot overcome the presumption of continued owner-
ship, at least as to creditors of the corporation, without proof
that he has done all in his power to have his name removed
from the books and thus placed himself in the position of
an involuntary record holder. The trial court merely found
that the defendant Ruef was not the owner of the stock
after December, 1908; that he had delivered the indorsed
certificate to the transferee and had requested the secretary
of the corporation to issue a new certificate. Ruef himself
testified that he did not personally deliver the stock certifi-
cate to the secretary of the corporation and that, so far as
he knew, no one had ever delivered it to the secretary for
the purposes of the transfer. No request was made by the
transferee for the issuance of a new certificate, nor was the
assignment exhibited to the corporation or the old certificate
surrendered. To issue a new certificate under these circum-
stances might render the corporation liable both to the holder
of the new and old certificates. (Morawetz on Private Cor-
porations, 2d ed., sec. 186.) In short, the findings fail to
show that the defendant Ruef made any showing of a proper
or diligent effort to procure a removal of his name as stock-
holder from the corporation's books, and they do show that
his name appeared upon the books at the time of the creation
of the liability sued upon. Therefore, assuming that the
trial court was justified in finding that Ruef had transferred
the stock and was not in fact the owner after December, 1908,
he, nevertheless, remained liable as a stockholder of record to
the creditors of the corporation, and the judgment that he
was not liable to plaintiff is not supported by the findings
and is erroneous. (*Plumb* v. *Bank of Enterprise,* 48 Kan.
484, [29 Pac. 699]; *Borland* v. *Haven,* 37 Fed. 394, 407.)

The next point for consideration is whether or not the trial
court erred in granting a nonsuit upon the cause of action
for damages on the ground that the covenants to repair the
buildings did not require the lessees to rebuild in case of
total destruction of the buildings by fire.

[5] We are not in accord with respondents' suggestion
that appellant has not presented a sufficient record for the
consideration of this question because no proper offer of evi-
dence appears to support the averments of the complaint.
During the discussion arising upon the making of the motion
for a nonsuit, plaintiff made a general offer of evidence

supporting all of the averments of its complaint, and the trial court in granting the motion obviously considered the offer sufficient to justify its consideration of the merits of the motion upon the larger ground of the inadequacy of the covenants in the lease to require the defendants to restore the destroyed structures upon the lands covered by it.   The question in this larger aspect is, we think, properly before the court.

Nor do we favor respondents' contention that the action, if maintainable at all, has been prematurely brought, because the duty, if such existed, of the tenant in possession to restore the destroyed structures was one which, under the covenants in the lease requiring the tenant to surrender the premises in good order at the close of the term, could have been performed at any time before the close of such term, and that, therefore, there had been no default in its performance at the time of the institution of this action.   If the covenants relied upon by appellant are sufficiently broad to require the tenant to restore the destroyed buildings, they were broken by the defendants' refusal to comply with the express demand in writing served upon them by the plaintiff and by the surrender of the premises by the tenant in possession to the plaintiff prior to the commencement of this action. [6]   Moreover, the plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be taken advantage of by the defendant in such action.   (*Bemmerly* v. *Woodward,* 124 Cal. 568, [57 Pac. 561].)

We are also inclined to adopt appellant's contention that the covenants to repair contained in the lease are general covenants.   These covenants read as follows:

"That the said lessees will repair and keep in good order, condition and repair the whole of said premises, at their own cost and expense and said lessees hereby expressly waive all right to make repairs at expense of landlord, as provided for in section 1942 of the Civil Code of California."

"The lessees hereby covenant and agree at their own cost and expense to keep in good order and repair all buildings and structures, and the piping and plumbing thereof, upon said property, and the sidewalks in front of the same.   And in the event that new plumbing or piping, or new sidewalks or repairs to sidewalks, are at any time during the term or

any extension thereof required by the Municipal or other authorities, then as often as the same are so required the lessees shall furnish the same at their own cost and expense.''

''The foregoing provision shall apply to all structures now upon said property which are not removed to make way for new buildings as herein provided for, and also to the said buildings and other structures which shall be built hereunder.''

The lease also contained an agreement on the part of the lessees to surrender the premises ''in as good state and condition as the same are now or may be put into, reasonable use and wear thereof, and damage by the elements, excepted.''

[7] With respect to the first covenant, it is urged by respondents that the term ''repairs,'' as used in the first clause, means only such repairs as are contemplated in sections 1941 and 1942 of the Civil Code. This contention is unsound. A fair interpretation of the sentence requires a construction of the two clauses as expressing agreements independent of each other, the conjunction ''and'' in this instance indicating a break in the thought equivalent to the commencement of a new sentence. This being so, there is no basis for the argument that the term ''repairs'' in the first clause is not to be taken in its general sense.

[8] With respect to the second covenant, it is even more obvious that the enumeration of particular items of repair was not intended to operate as a waiver of the obligation to make other repairs naturally comprehended in the agreement to ''keep in good order and repair all *buildings and structures . . .*'' (Italics ours.)

[9] It is appellant's contention that a general covenant to repair imposes an obligation to rebuild structures which have been completely destroyed. This must necessarily be the nature of appellant's claim, inasmuch as the amended complaint filed herein avers and repeatedly affirms the fact that the buildings upon the demised premises were destroyed by fire on the twenty-ninth day of May, 1911, and the general offer of proof made during the trial was confined to an offer to prove the averments of the complaint.

Upon the question as to whether or not a general covenant to repair imposes an obligation to rebuild structures completely destroyed, the decisions in the different jurisdictions are not harmonious. Appellant relies upon the early case of

*Polack* v. *Pioche,* 35 Cal. 416, [95 Am. Dec. 115], and the more recent case of *Egan* v. *Dodd,* 32 Cal. App. 706, [164 Pac. 17], in both of which cases the tenant's liability to make repairs under a general covenant to repair was asserted and affirmed. In the latter case it affirmatively appears that the dilapidations were not such as to require the rebuilding or replacement of the entire structure. The case of *Polack* v. *Pioche, supra,* was primarily concerned with the determination of the meaning of the phrase "damages by the elements or acts of Providence"; it does not appear that there was a total destruction in that case, although the case has been cited as requiring the rebuilding of totally destroyed structures. (*Wattles* v. *Omaha etc. Co.,* 50 Neb. 251, [61 Am. St. Rep. 554, and 566, note, 36 L. R. A. 424, 69 N. W. 785].) The reason for this interpretation is, perhaps, to be found in certain statements in the argument of counsel, a summary of which is printed in the California Reports (35 Cal. 417–419), preceding the opinion in the case. The expressions therein contained, of course, were merely by way of argument, and were in no sense intended as a statement of the facts of the case. Moreover, even assuming that the case under discussion goes to the extent of requiring a rebuilding of a structure totally destroyed by fire without the fault of the tenant, and that such was the rule of the common law, that rule cannot be followed in the instant case.

The rule is at most a rule of construction and is necessarily subject to such contrary or inconsistent rules of construction as may have been devised and promulgated by our own legislature. In 1872, after the decision in *Polack* v. *Pioche,* 35 Cal. 416, [95 Am. Dec. 115], section 1644 of the Civil Code was adopted, providing, "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." There is no apparent reason why a lease of real property should not be construed as any other contract pursuant to the code provisions, by the application of the prescribed tests. We must, therefore, look to the subject matter of the contract and the language of the parties in its ordinary signification in order to determine therefrom what was their

intention, upon what proposition their minds actually met, and to what they did consciously consent.

By the contract the lessees were to have the use of a small and very valuable tract of land in a city for a certain period of time and in return for such use they were not only to pay a large sum in money each month, but were also to place upon the land buildings of very considerable value which were to become the property of the lessor, not only by operation of law (Civ. Code, sec. 1013), but by the express terms of the contract itself. These buildings were to be kept and surrendered in good order, condition, and repair, damages by the elements excepted. It must be conceded that the exception of "damages by the elements" does not include damage by fire, unless the fire is caused by lightning or some other superhuman agency. (*Polack* v. *Pioche,* 35 Cal. 416, [95 Am. Dec. 115]; *Pope* v. *Farmers' Union etc. Co.,* 130 Cal. 139, [80 Am. St. Rep. 87, 53 L. R. A. 673, 62 Pac. 384]; *Ahlgren* v. *Walsh,* 173 Cal. 27, 35, [Ann. Cas. 1918E, 751, 158 Pac. 748].) The extent of the liability of the lessees in respect to the damages in question is therefore dependent entirely upon the interpretation of the terms "repair" and "keep in repair." These terms are not technical, nor is there anything to indicate that they were used in any technical or special sense or in accordance with any special usage. A general covenant to repair on the part of the tenant is, as stated in *Polack* v. *Pioche, supra,* binding unless limited by express exception, but such a covenant, even if it be in the most general terms, does not constitute an agreement to rebuild unless the term "repair" means also to replace. It has no such meaning in its normal sense. To repair means to mend an old thing, not to make a new thing; to restore to a sound state something which has become partially dilapidated, not to create something which has no existence. (*Wattles* v. *Omaha etc. Co.,* 50 Neb. 251, [61 Am. St. Rep. 554, 36 L. R. A. 424, 69 N. W. 785].) When we speak of repairing a thing, the very expression presupposes a thing in existence to be repaired. If a workman undertakes to repair an article, he obviously contemplates making whole an existing article and not the manufacture of something new. Indeed, this very distinction is recognized in the covenants of the lease itself wherein it is provided that the lessees shall furnish "new sidewalks *or* repairs to sidewalks." (Italics

ours.)   And the very fact that with respect to the plumbing
and sidewalks the lease specifically required replacement as
well as repairs in itself furnishes internal evidence of a very
convincing nature that the parties did not use the term
''repair'' in any other than its ordinary and generally ac-
cepted meaning.

It is urged, in appellant's behalf, that the fact that the
value of the buildings erected by the lessees constituted a
substantial portion of the consideration, for the lease indi-
cates that it was the intention of the parties that the lessees
should rebuild in case of destruction of the buildings.   The
lease under consideration sets forth the agreement on the
part of the lessees to erect buildings on the property and
specifically limits the amount to be so expended by the lessees
to one hundred and fifty-five thousand dollars. It is reasonable
to suppose that, if it was intended that the lessees were to
assume liability for an additionl one hundred and fifty-five
thousand dollars in case of the accidental destruction of the
buildings, such liability would have been set forth with equal
particularity.   Moreover, appellant's argument in this par-
ticular is further weakened by the fact that, while it is true
that the value of the buildings erected constituted an im-
portant part of the consideration for the lease, still the
covenants with respect to the erection of buildings had been
fully performed prior to the fire, the performance had been
accepted by the lessor, and, by the express terms of the lease,
all liability upon these covenants had ceased.   The lease pro-
vided that if, at the end of the first three years, the lessees
did not elect to extend the term, the lessor was to purchase
from the lessees the buildings erected by them at half of the
appraised value.   On the other hand, if the lessees elected to
extend the term, then, immediately upon the exercise of the
option to extend, the buildings were to ''belong to and be-
come and remain the absolute property of the lessor, and in
such event the lessees do hereby sell, assign, transfer and set
over the said building or buildings to the said lessor.''   The
lease expressly provided that the lessees' ''obligation to erect
buildings'' should terminate at the end of the first three-year
period.   The buildings were destroyed during the second
three-year term, after the exercise of the option and, there-
fore, after the buildings had become the property of the

lessor, after performance of the covenants to build had been completed by the lessees, and after these covenants "to erect buildings" had ceased to operate. The liability of a tenant cannot be extended to include the liability of an insurer of the property of another by implication or by aught save a clear and unequivocal agreement in any case where such liability is not created by operation of law.

[10] The general agreement to surrender the premises, at the expiration of the term, in as good condition as they may have been in at the beginning of or during the term must be construed with the other covenants in the lease prescribing the liability of the lessees in the event of damages to the premises. It follows that the agreements to keep the premises in good repair and, at the end of the term, to surrender them in as good condition as they were in at the beginning of or during the term are not, and do not include, a covenant to replace a structure totally destroyed by fire without the fault of the tenant. (*Wattles* v. *Omaha etc. Co., supra; Miller* v. *Morris,* 55 Tex. 412, [40 Am. Rep. 814]; *Levey* v. *Dyess,* 51 Miss. 501.)

We conclude, therefore, that, under the covenants of the lease now under consideration, neither the original lessees nor their assignee, the tenant in possession, were required to rebuild the destroyed structures, and, consequently, that they are not bound to respond in damages for their failure to do so. The trial court did not err in granting a nonsuit as to plaintiff's second cause of action.

That part of the judgment which directs that the plaintiff take nothing upon the first cause of action as against the stockholders of the defendant corporation and the defendant A. Ruef is reversed; that part of the judgment which directs that plaintiff recover upon the first cause of action against the defendant corporation and the original lessees is affirmed. The judgment of dismissal of the second cause of action as to all of the defendants is affirmed.

Shaw, J., Sloane, J., Olney, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.