THE VIKINGS, USA BOOTHEEL MO, a Missouri Not–for–Profit Corporation, Plaintiff–Appellant,

v.

MODERN DAY VETERANS, a Missouri Not–For–Profit Corporation, Defendant–Respondent.

No. 23746.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 22, 2000.

W. Edward Reeves, Ward & Reeves, Caruthesville, for Appellant.

Keith D. Sorrell, Spain, Merrell and Miller, L.L.P., Poplar Bluff, for Respondent.

GARRISON, Judge.

The Vikings, USA Bootheel MO, ("Vikings") appeals the denial of its request for an injunction against Modern Day Veterans ("MDV"). We affirm.

This dispute involves Vikings and MDV, two not-for-profit corporations conducting business as competitors in southeast Missouri. Both Vikings and MDV are organized similarly, in that they are national organizations that have entered into contractual affiliations with local social-service organizations.[1] Both groups provide organizational and administrative assistance to their affiliates in return for an annual fee. This assistance includes advising affiliates with regard to incorporation and annual corporate filing requirements, liquor licensure, bingo licensure, and maintenance of tax-exempt status.

In 1998, Vikings filed a petition in the Butler County Circuit Court seeking an injunction against various actions undertaken by and representations made by MDV. Vikings alleged that MDV was improperly soliciting Vikings' subordinates for MDV memberships in that MDV agents were making representations that were false and fraudulent and made for the purpose of inducing Vikings' subordinates to change their memberships. Specifically, the representations that MDV allegedly made were: (1) that if Vikings' subordinates switched to MDV affiliations, they could continue to enjoy tax-exempt status, could continue to operate pursuant to pre-existing liquor and bingo licenses, or lose no time in applying for a bingo license; (2) that MDV has a group-exemption status pursuant to Section 501(c)(19) of the Internal Revenue Service Code and that status could be used by the subordinates switching to MDV; and (3) that MDV could provide the same services as Vikings at a lesser cost. In its petition for injunctive relief, Vikings requested that MDV "be ordered to cease interfering with [Vikings'] legitimate, on-going business relationships with local 'Vikings U.S.A.' social and service clubs organized and chartered through [Vikings]." MDV filed its answer denying the allegations made by Vikings.

Vikings and MDV ultimately resolved many of the Vikings' claims by entering into a stipulation that MDV, in soliciting new clubs or businesses, would not make any reference to Vikings. That stipulation also contained both parties' agreements as to the sole remaining issue to be tried: Whether MDV would be allowed to disseminate information to prospective or potential members of its organization that the organization may apply to the Secretary of State's Office to change its name but preserve its original corporate charter. The stipulation also contained an admission of fact that MDV was actually informing prospective members that they could change their corporate name and preserve their original corporate charter.

On May 24, 2000, the trial court entered its judgment, which set forth MDV and Vikings' previous stipulation, but denied injunctive relief as to the one issue submitted to the trial court for resolution by the parties. Vikings appeals.

Initially, we note that our review of this case is governed by the principles established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[2] We must affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32; *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 670 S.W.2d 895, 899–900 (Mo.App. E.D.1984).

---

1. Vikings' affiliates are referred to as "subordinates," and MDV's affiliates are referred to as "clubs." Both Vikings' subordinates and MDV's clubs have corporate identities separate from that of their national organization.

2. *Murphy* interpreted Rule 73.01(c), which has since been amended with its prior provisions being essentially contained in the present Rule 84.13(d), Missouri Rules of Civil Procedure 2000.

Further, as a general proposition, injunctive relief is discretionary and does not issue as a matter of right. *Community Title Co.,* 670 S.W.2d at 900. Injunctive relief is a harsh remedy to be used sparingly and only in clear cases. *Id.*

■ Vikings portrays MDV's action as tortious interference with a business relationship. In order to state a claim on that theory, Vikings was required to show: (1) the existence of a contract or valid business expectancy; (2) MDV's knowledge of the contract or relationship; (3) a breach of the contract induced by or caused by MDV's intentional interference; (4) the absence of justification; and (5) damages resulting from MDV's conduct. *See Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 438 (Mo.App. S.D.1998).

Vikings contends in its point on appeal that the "procedure urged upon the Vikings'. 'subordinates' by [MDV] is an inducement to take an action that is *ultra vires,* in violation of the 'subordinates' own organic documents and in breach of the 'subordinates' agreements with the Vikings." Vikings argues that each of Vikings' subordinates adopts a "Constitution & By–Laws" that provides, *inter alia,* that "[n]o Vikings USA Bootheel MO lodge or post may change their name or affiliation with the Secretary of States [sic] Office without the written permission of the Vikings USA Bootheel MO National Headquarters." Vikings contends, therefore, that the representation made to Vikings' subordinates by MDV that such subordinates may change affiliation from Vikings to MDV by simply filing articles of amendment with the Secretary of State's Office was an affirmative misrepresentation and without justification and, thus, constituted tortious interference with Vikings' business relationships.

■ "Without justification" has been defined, in the context of tortious interference with business relationships, as the absence of any legal right to take the actions that form the basis of the claim. *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.,* 931 S.W.2d 166, 181 (Mo. App. W.D.1996). Generally, conduct lacks justification when a defendant has employed "improper means" to further the defendant's interests to the detriment of plaintiff. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 317 (Mo. banc 1993). "[I]mproper means" are those that are "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.* No liability arises from interfering with a contract or business expectancy, if the defendant had an unqualified legal right to do the action of which the petition complains. *Macke,* 931 S.W.2d at 181.

In this case, Vikings has failed to prove that the statements made by MDV to Vikings' subordinates were without justification. Vikings introduced their own corporate documents, "Constitution & By–Laws," and articles of incorporation into evidence for the trial court to consider. However, they did not introduce any of their subordinates' corporate documents. Vikings contends that MDV encouraged Vikings' subordinates to violate their own corporate documents, but failed to provide any evidence as to what those corporate documents were. The only evidence presented that included the restrictive clause on name changes was in the Vikings' own articles of incorporation. Vikings, however, argues that an unsigned form document labeled "Vikings USA Bootheel MO Statement of Acknowledgement of Constitution & By–Laws"[3] serves as proof that subordinates adopted such a restriction.

---

**3.** The "Statement of Acknowledgement of Constitution & By Laws" reads:

> We, the Vikings USA Bootheel MO # _____, subordinate of the Vikings USA Bootheel MO (parent organization),

acknowledge and understand the aims, purposes, and general activities as set forth in the Constitution and By Laws presented therein.

However, Vikings presented no evidence that any of their subordinates actually signed such a document, or that the document was more than a general agreement by the subordinates to abide by the "aims, purposes, and general activities" of Vikings as set forth in Vikings' "Constitution & By-Laws."[4] Therefore, there is no proof that the restrictive clause concerning name changes was binding upon the subordinates.

Given that the restriction was not proven to be binding upon the subordinates, MDV's statements to the subordinates concerning name changes were not misrepresentations of fact under the existing state of the record. Under Section 351.085, RSMo 1994, a corporation "may amend its articles of incorporation, from time to time, in any and as many respects as may be desired; provided, that its articles of incorporation as amended contain only such provisions as might be lawfully contained in original articles of incorporation." Such permissible amendments include corporate name changes. Under the evidence here, MDV did not misrepresent this procedure to Vikings' subordinates. This portion of Vikings' point is therefore denied.

Vikings also contends that corporate name changes by the subordinates perpet-uate a fraud on Missouri's statutory scheme for awarding bingo licenses in that it allows businesses to evade statutes regarding limitations on the issuance of bingo licenses. Under Sections 313.010 and 313.020.1(3), RSMo Cum.Supp.1999, no organization can be granted a bingo license unless it has been in "continuing existence" for a period of at least five years prior to applying for the license. Vikings contends that a corporation that changes its name and affiliation cannot be said to have been in "continuing existence." Vikings, however, cites no authority in support of this proposition, and its contention runs contrary to the provisions of Section 351.085, RSMo 1994, which allow for the same corporation to continue in existence with a name change. This portion of Vikings' point must therefore also be denied.

The judgment of the trial court is affirmed.

PREWITT, J., and CROW, J., concur.

4. The Vikings' "Constitution & By-Laws" provides:

> We, the [Vikings] commit and realize our responsibility to our nation as a whole, and associate ourselves for the following purposes:
> 1. To promote fellowship among all minorities as well as majorities world-wide.
> 2. To defend our Constitution of the United States.
> 3. To actively contribute to the idea of peace and international sanctity now & forever, this by the grace of God.