354 F.Supp.2d 1032 (2004)
NATIONAL SURETY CORP., Plaintiff,
v.
PRAIRIELAND CONSTRUCTION INC., et al., Third-Party Defendants.
No. 4:03CV73 CDP.
United States District Court, E.D. Missouri, Eastern Division.
November 30, 2004.
*1034 Bernard A. Reinert, John W. Rourke, Aaron G. Weishaar, Reinert & Rourke, P.C., St. Louis, MO, for National Surety Corporation.
Joe D. Jacobson and Matthew R. Fields, Green, Schaaf & Jacobson, P.C., St. Louis, MO, for Peter E. Libbra, Jr. and Linda K. Libbra.
Gerald M. Dunne, Kodner, Watkins, Muchnick, Dunne & Weigley, LC, St. Louis, MO, for Prairieland Construction, Inc.
Chester A. Vogt and JoAnne Vogt, pro se.

Memorandum and Order
PERRY, District Judge.
National Surety Corp. provided construction bonds for work done by Prairieland Construction Inc. As part of the bonding process, National Surety required Prairieland and its owners and their wives to indemnify National Surety for any claims or other amounts it might be required to pay out on the bonds. When Prairieland failed, this litigation resulted. National Surety now seeks summary judgment on its claims for indemnification. There are no genuine disputes of material fact, and National Surety is entitled to judgment as a matter of law against Prairieland, and against the individual indemnitors, Peter and Linda Libbra, Gerald and Carrie Dunn, and Chester and Joanne Vogt.

1. Claims at Issue
The procedural history of this case is complicated, in part because of the consolidation of this case with 4:03CV93CDP. At various times parties have sought emergency relief, and there have been several hearings in the case. Multiple motions for summary judgment are pending. To clarify what I am ruling on and what will remain after this, ruling, I will summarize the claims and list those to which the summary judgment motions are directed.
National Surety has brought a four-count claim against Prairieland, the Dunnes, the Vogts, and the Libbras. This claim (docket entry # 7 in 4:03CV93 CDP) seeks recovery from all parties under the following theories: Indemnification (Count I); Specific Performance of Indemnity Agreements (Count II); to Declare and Enforce National Surety's Special Equity Interest in the Bonded Contract Funds (Count III); and for Exoneration and Quia Timet Relief (Count IV). National Surety has filed its motion for summary judgment against all third-party defendants on Count I of this claim, but has not so moved on the remaining Counts. Only the Libbras have responded to this motion. The Libbras, but not the other third-party defendants, have also filed their own motion for summary judgment on all of National Surety's claims against them.
Prairieland has brought a Crossclaim against National Surety in three counts: Breach of Indemnity Agreement (Count I); Tortious Interference (Count II); and Declaratory Judgment (Count III). (Docket entry # 23). National Surety has filed two different summary judgment motions directed to this crossclaim, but Prairieland has not responded to either motion for summary judgment.
All of Mehlville School District's claims and all other parties' claims against Mehlville *1035 were dismissed by stipulation dated January 13, 2004 (docket entry # 156).
The Libbras dismissed their counterclaims against National Surety by stipulation filed on May 17, 2004 (docket entry # 188; 189), without prejudice to their rights to raise the same arguments as defenses to National Surety's claims against them. Thus, the pending motion for summary judgment related to the Libbras' counterclaims will be denied as moot.

2. Facts
This case arises out of the failure of Prairieland Construction Inc. to perform certain construction contracts, including contracts with Mehlville School District and the City of St. Louis. These projects required payment and performance bonds, and National Surety bonded the jobs. Prairieland began having financial difficulties and started falling behind on the jobs and in paying its subcontractors. Eventually, National Surety was notified by owners and subcontractors that Prairieland was not meeting its obligations. National Surety received numerous claims against its bonds. It attempted to resolve both the payment and performance issues with Prairieland, but the problems persisted. On October 23, 2002, National Surety sent a letter to the various bonded property owners and obligees requesting that no further payments be made to Prairieland without National Surety's consent. Prairieland and its owners contend that it was this letter, not Prairieland's failure to meet its own obligations, that caused it ultimately to fail. National Surety eventually paid significant sums under the bonds.
The subject of all the claims now pending is the obligation of Prairieland, the Dunnes, the Vogts, and the Libbras to indemnify National Surety under two indemnification agreements that they signed. The first agreement is dated July 6, 1999. In it Prairieland and its shareholders Chester Vogt and Peter Libbra, and their spouses Joanne Vogt and Linda Libbra, executed a General Indemnity Agreement in consideration of National Surety's issuance of the payment and performance bonds. In September 2001, Peter Libbra sold all his stock in Prairieland to Gerald Dunne. The second agreement followed this sale, and was executed in October of 2001. It was executed by Prairieland, Dunne and Vogt, and their spouses. The Libbras were not parties to the second agreement. On November 20, 2001, Peter Libbra sent William Knoblauch, an agent for National Surety, a letter requesting that he and his wife be removed from indemnifying any future bonds issued on behalf of Prairieland. The letter does not mention any bonds that were already issued. On November 27, 2001, Knoblauch sent a responsive letter indicating that the Libbras would not be liable on any bonds issued after December 20, 2001, but that their obligation on all previously issued bonds continued. All expenses claimed by National Surety in this case relate to bonds executed before December 20, 2001.

3. Summary Judgment Standards
To determine whether to grant summary judgment, I must view the facts and inferences from the facts in the light most favorable to the plaintiff. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The defendant has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the defendant has met this burden, the plaintiff may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific *1036 facts showing that a genuine issue of material fact exists. See Fed.R.Civ.P. 56(e).
F.R.C.P. 56(e) provides that if the adverse party does not respond with specific facts showing that there is a genuine issue for trial, summary judgment, if appropriate, shall be entered against that party. In addition, Local Rule 4.01 provides that "All matters set forth in the statement [of uncontroverted material facts] of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the opposing party." Even where, as here, a motion for summary judgment stands unopposed, I must still determine whether the moving party is entitled to judgment as a matter of law based on the uncontested facts. Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir.1993).

4. National Surety's Claims for Indemnification
National Surety seeks summary judgment on Count I of its own claim against Prairieland, the Dunnes, the Vogts and the Libbras. This claim seeks indemnification for the amounts that National Surety has paid various claimants under the bonds, along with interest, attorneys fees and expenses. Only the Libbras have responded to this motion. The undisputed evidence shows that National Surety is entitled to summary judgment on Count I against all parties.
The contract of a principal to indemnify his surety is valid and will be enforced in accordance with its terms. American Ins. Co. v. Gilbert, 319 F.Supp. 1315, 1317 (E.D.Mo.1970). In this case, the indemnity agreements provide that:
The Indemnitors will indemnify the Surety against all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds ... including but not limited to sums paid or liabilities incurred in settlement of and expenses paid or incurred in connection with the claims, suits or, judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid ...
In addition, both agreements contain the following:
The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such amounts, with interest.
Courts have upheld the validity of provisions such as these, but have noted that any action of the surety in making payment must have been made in good faith. American Insurance Co., 319 F.Supp. at 1318; Central Surety & Ins. Co. v. Hinton, 233 Mo.App. 1218, 130 S.W.2d 235, 242 (1939). Courts have also held that provisions such as these should be construed to apply to a mistake of law made in good faith by the surety in making the disbursement. Fidelity & Deposit Co. of Maryland v. Fleischer, 772 S.W.2d 809, 816 (Mo.Ct.App.1989).
National Surety has presented this court with prima facie evidence of the liability of *1037 Prairieland, the Dunnes, the Vogts and the Libbras for the payments it made. There is no claim that National Surety improperly paid any of the claims. Prairieland, the Dunnes and the Vogts have not presented any evidence that National Surety's payments were made in bad faith or that the indemnity agreements are otherwise unenforceable.

5. The Libbras' Defenses
The Libbras have responded to the motion for summary judgment, and have filed their own motion for summary judgment against National Surety. They raise two issues: (1) was their 1999 indemnity agreement superseded by the 2001 indemnity agreement, to which they were not parties, thus relieving them from any indemnification obligation? (2) did National Surety act in bad faith in its dealings with Prairieland's customers, such that the indemnification agreement should not be enforced?
The parties dispute what state law should apply. At a hearing on April 11, 2003, I held that Missouri law applies, in part because all of the bonded construction projects were located in Missouri. As neither party has provided sufficient facts or citations to any authority suggesting that another state's law should apply, I will continue to apply Missouri law.
Under Missouri law, the rules applicable to the construction of contracts also apply to indemnity agreements. Chehval v. St. John's Mercy Medical Center, 958 S.W.2d 36, 38 (Mo.App.1997). The cardinal rule of contract interpretation is to ascertain the intention of the parties and to give effect to that intention. Boyer v. Sinclair & Rush, Inc., 67 S.W.3d 627, 631 (Mo.Ct.App.2002). When a contract is unambiguous, the language used is given its natural, ordinary, and common-sense meaning, and the entire contract is considered to determine the intentions of the parties. Id.; Chehval, 958 S.W.2d at 38. An ambiguity does not exist merely because the parties dispute the meaning of the contract. Whether language is ambiguous is a question of law for the court. Phipps v. School District of Kansas City, 645 S.W.2d 91, 100 (Mo.Ct.App.1982).
The 1999 indemnity agreement states in pertinent part:
The obligations of the Indemnitors hereunder shall be continuous provided, however, that any of the Indemnitors may give the Surety not less than 30 days written notice by registered mail of his desire to terminate this Agreement but any such notice of termination shall not operate, modify, bar, discharge, limit, affect, or impair his liability hereunder on or by reason of any such Bond executed prior to the termination of such 30 days.
Based on the plain language of the indemnity agreement, the Libbras had to give thirty days written notice to be terminated from any future bonds, but their liability on any bonds already issued was continuous. This language is not ambiguous.
Despite the language in the agreement, the Libbras argue that the 2001 indemnity agreement superseded the 1999 agreement, and therefore, the Libbras are released from all liability. The Libbras rely on an integration clause in the 2001 indemnity agreement:
This writing constitutes the entirety of the Agreement between Principal, Indemnitors, and Surety regarding the execution of Bonds and handling of claims against such Bonds. It may not be added to, changed, or modified orally. No addition, change or modification shall be effective unless specifically agreed in writing.
It is a general rule of law that when a later contract is entered into between the same parties, in relation to the same subject matter as an earlier one, the *1038 second contract supersedes the first, which is regarded as having been abandoned by the parties. Herboth v. American Radiator Co., 145 Mo.App. 484, 123 S.W. 533, 537 (1909); Porterfield v. American Surety Co. of New York, 201 Mo.App. 8, 210 S.W. 119, 124 (1919); GCIU Employer Retirement Fund v. Chicago Tribune Co., 66 F.3d 862, 865-66 (7th Cir.1995). The Libbras cite to GCIU, an Illinois case, to support their argument. In that case, the Seventh Circuit held that an agreement involving the same parties and subject matter, and based on the same consideration as an earlier agreement, superseded that previous agreement. GCIU Employer Retirement Fund 66 F.3d at 866.
In this case, however, the parties to the two indemnity agreements are not the same. Prairieland, the Libbras and the Vogts were parties to the 1999 agreement, but the parties to the 2001 agreement were Prairieland, the Dunnes and the Vogts. The 2001 agreement does not state that it supersedes the previous indemnity agreement, nor does it state that the Dunnes are replacing the Libbras or that the Libbras are discharged from their previous obligations. The Libbras have failed to meet their burden of proving that the 2001 indemnification superseded the 1999 one as to the Libbras.
The Libbras also appear to argue that the 2001 agreement is a novation, although they also state that this defense is not a proper subject for summary judgment. Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. State ex. rel. Premier Marketing, Inc. v. Kramer, 2 S.W.3d 118, 122 (Mo.Ct.App.1999). There are four elements necessary for finding a novation: (1) previous valid obligation; (2) agreement of all the parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. There must also be evidence that the parties intended to enter into a novation. Id. A creditor must intend to release all claim of liability against the original debtor to accomplish a novation. Wilson v. Midstate Industries, Inc., 777 S.W.2d 310, 313 (Mo.Ct.App. 1989).
The Libbras have presented nothing to refute the evidence provided by National Surety that it did not intend to release the Libbras when it entered into the 2001 indemnification agreement with the other parties. The only reasonable inference that could be drawn from the undisputed evidence presented is that neither party intended that result. Libbra's letter to Knoblauch asked to be released from future obligations, and Knoblauch's response unambiguously stated that the Libbras were not released from their obligations on bonds that had already been executed. The parties have presented additional evidence that they each argue favors their side: The Libbras present evidence that National Surety stopped notifying them of problems with Prairieland's performance, but instead notified Vogt and Dunne. National Surety presented evidence that Peter Libbra continued to work at Prairieland and made efforts to resolve its financial problems even after the 2001 agreement was executed by the other parties. None of this evidence is disputed, but the Libbras argue that inferences from it are issues of fact for a jury. I disagree. No reasonable factfinder could conclude from this evidence, even drawing all inferences in favor of the Libbras, that National Surety intended to release them from their obligations under the 1999 agreement. This is an essential element that must be proven by the Libbras, and they cannot prove it.
The Libbras' second argument is that National Surety acted in bad faith when it *1039 sent the October 23, 2002 letter to Prairieland's customers, and that this bad faith renders the indemnification agreements unenforceable. This is essentially the same claim that Prairieland makes in its counterclaim against National Surety, and so I will discuss it together with that claim.

6. Prairieland's Counterclaim against National Surety
Prairieland's counterclaim against National Surety has three counts. In its first count, Praireland alleges that National Surety breached the indemnity agreements. The second count alleges tortious interference with the contracts between Prairieland and two customers: Mehlville School District and the City of St. Louis. In the third count Prairieland seeks a declaratory judgment. National Surety has filed two separate motions for summary judgment attacking the counterclaim, and Prairieland has not responded to either.
To succeed on a claim for breach of contract in Missouri, Prairieland must establish: (1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages. Rhodes Engineering, Inc. v. Public Water Supply District No. 1, 128 S.W.3d 550, 560 (Mo.App.2004).
National Surety argues that it did not breach the indemnity agreements and that Prairieland has not presented any evidence that it suffered damages. It appears that Prairieland's claim that National Surety breached the indemnity agreements is based on its argument that National Surety tortiously interfered with Prairieland's contracts with the City of St. Louis and the Mehlville School District when it sent its October 23, 2002 letter. This is the same as its claim in Count II, and is also the basis for the Libbras' argument of bad faith.
Under Missouri law, tortious interference with a contract requires proof of five elements: (1) a contract; (2) defendant's knowledge of the contract; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. Rhodes Engineering Co., Inc., 128 S.W.3d at 564; Fabricor, Inc. v. E.I. DuPont De Nemours & Co., 24 S.W.3d 82, 93 (Mo.Ct.App.2000). Missouri law does not allow a plaintiff to claim a defendant interfered with a contract to which that defendant was a party. Friedman v. Edward L. Bakewell, Inc., 654 S.W.2d 367, 369 (Mo.Ct.App.1983); Saey v. Xerox Corp., 31 F.Supp.2d 692, 701 (E.D.Mo.1998).
The wrongful act must have been intentionally done. Gerstner Electric, Inc. v. American Insurance Co., 520 F.2d 790, 794 (8th Cir.1975). There must be proof that the defendant intended to commit an act which it knew was wrongful. The absence of justification element has been defined as the absence of any legal right to take the actions that form the basis of the claim. The Vikings, USA Bootheel, MO v. Modern Day Veterans, 33 S.W.3d 709, 711 (Mo.Ct.App.2000). Conduct lacks justification when the defendant uses improper means to further the defendant's interests to the detriment of the plaintiff. No liability arises from interfering with a contract if the defendant had an unqualified legal right to take the action of which the petition complains. Id.
In its motion for summary judgment, National Surety argues that Prairieland cannot succeed on its claim for tortious interference because National Surety was a party to the contracts. National Surety also contends that Prairieland has not established other elements of the claim. As National Surety points out, in my oral opinion on April 11, 2003, I stated that the performance bond was the contract between Mehlville and National Surety, and that it incorporated and referred *1040 to the trade contract between Mehlville and Prairieland. Therefore, National Surety was a part of the trade contract. In addition, National Surety, as surety, did sign the trade contract between the City of St. Louis and Prairieland, making it a party to that contract. It therefore cannot be liable for interfering with Contracts to which it was a party.
Even assuming, however, that National Surety was not a party to the contracts, neither Prairieland nor the Libbras have shown that National Surety was not justified in sending the October 23, 2002 letter. Under the bonds, National Surety had the right to take actions to minimize its losses and complete the work. Under the indemnity agreements, in the event of Prairieland's default in the performance of the contract, National Surety had the right to do certain things, including "to take any other action which the Surety may deem appropriate." It is undisputed that Prairieland defaulted on its contracts with Mehlville and with the City of St. Louis and that Prairieland was not completing its construction obligations or paying all its subcontractors. It is undisputed that National Surety was receiving claims against its bonds. It is also undisputed that National Surety had received information, from statements made by Vogt, that Prairieland would divert funds from one project to pay for another, which would be a further violation of its obligations. Neither the Libbras nor Prairieland has shown that National Surety lacked legal justification for writing the letter. Rather, the undisputed evidence shows that National Surety was justified in doing so. Therefore, both Prairieland's counterclaim and the Libbras' bad faith defense fail.
Prairieland seeks a declaratory judgment in Count III of its claim. It alleges that National Surety breached its fiduciary duty and its duty of fair dealing to Prairieland and that Prairieland is relieved from any further liability or obligations under the indemnity agreement. Because National Surety is entitled to judgment as a matter of law against Prairieland, Prairieland's claim for declaratory judgment fails.

7. Damages
National Surety's uncontested evidence shows that it had paid claims in the amount of $1,581,684.87 at the time it filed its motion. It had collected from project owners $656,071.47, which reduces the damages it is owed by the indemnitors.
National Surety also claims it is entitled to prejudgment interest under Mo.Rev. Stat. § 433.050, at the statutory rate of ten percent. National Surety's claim meets the statutory requirements, so it is entitled to pre-judgment interest under the state statute at the statutory rate. When National Surety filed the summary judgment motion accrued interest was $122,169.40.
Finally, National Surety seeks reimbursement for its attorneys fees and other expenses incurred. Both the 1999 and the 2001 agreements provide that the indemnitors will "indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys, and other expenses which the surety may sustain or incur by reason of, or in consequence of the execution of such bonds." National Surety has presented uncontested evidence that as of the date of the filing of the motion it had incurred attorneys fees in the amount of $726,435.44, expenses with its surety consultant in the amount of $65,272.35, and other expenses in the amount of $40,000.51.

8. Remaining Issues
National Surety has shown that it is entitled to the amounts it claims under the indemnity agreements, and that all of the third-party defendants are jointly and severally liable for the full amounts claimed. *1041 The case, however, is not ready for entry of final judgment because National Surety's Counts II, III and IV against all seven third-party defendants remain pending. I will set these remaining claims for trial on January 31, 2005, and the parties' pretrial submissions will now be due twenty days before the new trial date. After resolution of those claims at trial, I will enter final judgment in accord with this order granting summary judgment. I will allow National Surety to present updated damages evidence at that time, so that the final judgment can include all claims paid, less set-offs, along with interest, expenses and attorneys fees.
Accordingly,
It Is Hereby Ordered that National Surety's motion for summary judgment on Count I of its claim against all third-party defendants [# 192] is granted, but final judgment is withheld for the reasons set forth above.
It Is Further Ordered that National Surety's motions for summary judgment on all counts of Prairieland's counterclaim [# 178, 193] are granted.
It Is Further Ordered that National Surety's motion for summary judgment on the Libbras' counterclaim [# 182] is denied as moot, as the counterclaim was dismissed after the motion was filed.
It Is Further Ordered that the Libbras' motion for summary judgment on all claims asserted by National Surety [# 190] is denied.
It Is Further Ordered that the Libbras' motions to for leave to file missing or additional evidence [# 195, 202] are granted.
It Is Further Ordered that the Libbras' motions to strike [# 198, 203, # 208] are denied.
It is Further Ordered that all remaining claims are set for jury trial on the two-week docket beginning January 31, 2005, and the parties' pretrial submissions are now due twenty days before the new trial date.