ND–SELL, INC. dba Indy Wallace Realtors, Plaintiffs,

and

Indira Wallace, Plaintiff–Appellant,

v.

GREATER SPRINGFIELD BOARD OF REALTORS, INC., and Multilist Service of Springfield Realtors, Inc., Defendants–Respondents.

No. 27832.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 2007.

---

Jerry M. "Jay" Kirksey, John W. Forkner, Bolivar, for Appellant.

Craig F. Lowther, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Indira Wallace[1] ("Appellant") appeals the trial court's denial of her "Petition and Motion for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction" against disciplinary action imposed on Appellant by the Greater Springfield Board of Realtors, Inc. ("Board of Realtors") and Multilist Service of Springfield Realtors, Inc. ("Multilist Service"). Appellant brings two points on appeal. Finding no error, we affirm.

### Factual Background

The Board of Realtors is a not-for-profit corporation incorporated under the laws of Missouri. Multilist Service, which is a subsidiary of the Board of Realtors, is a for-profit corporation incorporated under the laws of Missouri. Members of the Multilist Service are able to easily list, review, and view homes on the market in the Springfield area.

Appellant is a Realtor and corporate officer of Indy Wallace Realtors, Inc. As a member of the Board of Realtors, Appellant signed a "Membership Application and New Member Form" in which she agreed to abide by the Code of Ethics of the National Association of Realtors, and the Constitutions, Bylaws, Rules and Regulations of the Greater Springfield Board of Realtors. To become a Multilist participant, Appellant also signed a Sublease Agreement in which she agreed, *inter alia,* to "comply with the Rules and Regulations

relating to the use of the Service which are set forth in the User's Guide and the Rules and Regulations of the MLS system used by [Multilist Service]."

The present conflict arose in March 2004 when Appellant's client, Johnna Beebe, filed a two count complaint against Appellant with the Board of Realtors' Grievance Committee. The portion of Ms. Beebe's complaint relevant to this appeal is that Appellant gave Ms. Beebe her Multilist lock box key to tour homes when Appellant was not present.

On July 16, 2004, the Multilist Board of Directors ("Multilist Board") sent Appellant a letter stating that they had reviewed Ms. Beebe's complaint that Appellant gave her Multilist lock box key to an unauthorized user. The letter continued, "the [Multilist Board] voted in accordance with the [Multilist Rules], Section[s] 9.1 & 9.2 to fine you $5,000 and suspend you from [Multilist Service] for a period of one year." The letter from the Multilist Board concluded by advising Appellant of her right to appeal the decision and request a hearing before the Professional Standards Committee of the Board of Realtors ("Standards Committee") within twenty days of receiving the Multilist Board's decision. Appellant requested an appeal.

Rather than granting Appellant an appeal from its original decision, the Multilist Board withdrew its administrative decision and transferred the case to the Standards Committee for a hearing in a *de novo* format: i.e., with a clean slate and with no presumptions against her. On September 20, 2004, the Board of Realtors gave Appellant notice of the upcoming hearing by a document captioned "Official Notice of

---

1. In the case below, Plaintiffs were designated as "ND–Sell, Inc. dba Indy Wallace Realtors and Indira Wallace"; however, Ms. Wallace is the only Plaintiff to appeal the trial court's decision.

Hearing (MLS Rules Hearing)." That notice advised Appellant of: the hearing date and location, that she was accused of violating the Multilist Rules by giving her lock box key to another, the names of the Standards Committee members that would hear her case, her right to be represented by legal counsel and to present witnesses.

After the Standards Committee heard Appellant's case on October 20, 2004, it issued a written opinion with the following findings:

> [T]hat [Appellant] gave Micheal Glidewell her lock box key and combination and allowed Micheal Glidewell and Johnna Beebe to go in to houses without her being present. Micheal Glidewell and Johnna Beebe were not authorized users. This was a breach of confidentiality and integrity of the Multi[l]ist Service and compromised the integrity of the Multi[l]ist Service.

The opinion concluded that Appellant's actions were "a violation of the Multi[l]ist Sub-lease Agreement [Appellant] signed on May 30, 2003[,] and *a violation of 7.31 of the Multi[l]ist Policies.*" (emphasis added). The Standards Committee recommended exactly the same punishment as the Multilist Board did in its prior administrative decision; that is, a one-year suspension and a $5,000 fine.

Appellant petitioned the Greene County Circuit Court to enjoin imposition of the Standards Committee's sanction. In denying Appellant's request for an injunction, the trial court found in pertinent part:

> 31. The Court does find that the sanctions that were given are permitted under the Board's rules, and are not unreasonable in light of the serious nature of [Appellant's] violations found by the [Standards Committee].
>
> ....
>
> 33. The Court finds that the actions of the [Respondents] provided due pro-

cess to [Appellant] at the [Standards Committee] hearing, in that she was apprised of the allegations, was given every chance to defend herself, and was allowed to confront and cross-examine witnesses, and was allowed to be represented by an attorney.

> 34. The Court finds that [Respondents] had authority and jurisdiction over the issues decided at the [Standards Committee] hearing due to the fact that [Appellant] did sign the Membership Application and New Member Form, [ ] and a Sublease Agreement for her lock box key [ ].
>
> ....
>
> 36. The Court finds that an ethics hearing was held under the [Respondents'] above-referenced Code of Ethics, that the issues were identified, and [Appellant] was notified of the type of hearing by the chairperson, all in compliance with the [Respondents'] internal rules.
>
> 37. This Court finds that it makes no difference whether the [Standards Committee] hearing was a Rules and Regulations violation, or an ethics hearing, in that the penalties were exactly the same, and that the procedure as set forth in the Code of Ethics and Arbitration Manual for the hearing was followed.
>
> 38. The Court finds that there are only two (2) types of hearings that the [ ] Standards Committee is empowered to hear under [Respondents'] rules. One is an arbitration issue, when brokers have a dispute about a commission, and the only other type of hearing is an ethics hearing. There are no other hearings held by the [ ] Standards Committee.

On appeal, the trial court's denial of injunctive relief is contested.

### *Standard of Review*

 As a general matter, "injunctive relief is discretionary and does not issue as a matter of right." *Vikings, USA Bootheel MO v. Modern Day Veterans,* 33 S.W.3d 709, 711 (Mo.App. S.D.2000). "Injunctive relief is a harsh remedy to be used sparingly and only in clear cases." *Id.* The trial court's judgment denying equitable relief will be upheld unless it is against the weight of the evidence, unsupported by the evidence, or erroneously declares or misapplies the law. *Systematic Business Services, Inc. v. Bratten,* 162 S.W.3d 41, 46 (Mo.App. W.D.2005). We view all evidence in the light most favorable to the judgment, disregarding evidence to the contrary, and defer to the trial court's determinations as to the credibility of witnesses. *Ortmann v. Dace Homes, Inc.,* 86 S.W.3d 86, 88 (Mo.App. E.D.2002). The trial court's interpretation of the contract, however, is a question of law which we review *de novo. Helterbrand v. Five Star Mobile Home Sales, Inc.,* 48 S.W.3d 649, 658 (Mo.App. W.D.2001).

In her first point, Appellant argues that the trial court erred as a matter of law in finding that the sanctions imposed were permitted by Respondents' rules in that a proper analysis of the documents submitted at trial demonstrates that the sanctions imposed were in excess of those permitted. Appellant's argument in her first point has two prongs. First, she argues the trial court incorrectly concluded that the case against her fell under the Code of Ethics rather than the Multilist Rules. Second, she concludes because this is a Multilist Rules case, then pursuant to § 7.31 that was cited in Respondents' written opinion, the maximum possible penalty she could receive was a $1,000 fine. In Appellant's second point, she argues that the sanctions imposed on her by the Standards Committee were not permitted in

that they were derived from § 9.2 of the Multilist Rules, while § 7(e) of the Multilist Rules provides that only §§ 9 and 9.1 shall apply for "failure to comply with any other rule."

### *Point II*

 Because a discussion of the contract provisions of the Multilist Rules affects both points, we shall commence our discussion with Point II. Appellant argues that the trial court erroneously found that the sanctions imposed by the Standards Committee were permitted under the Multilist Rules. She cites § 7, "Compliance with the Rules," wherein the pertinent section states, "[f]or failure to comply with any other rule, the provisions of Sections 9 and 9.1 shall apply." Section nine states in relevant part:

**Section 9 Consideration of Alleged Violations:** The Board of Directors shall give consideration to all written complaints having to do with violations of the Rules and Regulations.

**Section 9.1 Violations of Rules and Regulations:** If the alleged offense is a violation of the rules and regulations of the Service and does not involve a charge of alleged unethical conduct or request for arbitration, it may be administratively considered and determined by the Board of Directors of the Service, and if a violation is determined, the Board of Directors may direct the imposition of sanction, provided the recipient of such sanction may request a hearing before the Professional Standards Committee of the Board in accordance with the bylaws and rules and regulations of the Board of REALTORS within twenty (20) days following receipt of the Directors' decision.

**Section 9.2 Sanctions and Violations:** If violations are determined the following sanctions may be imposed:

a. Letter of reprimand

b. Letter of warning

c. Approximate and reasonable fine not to exceed $5000.00

d. Required to attend appropriate course or seminar

e. Suspension not less than thirty (30) days but no more than one (1) year from using or subscribing to the MLS Service

f. At the option of the Board of Directors, assessment in lieu of suspension with assessment not to exceed $5000.00 which can be utilized only once in any three (3) year period.

g. Suspension or termination of MLS rights and privileges may also be utilized. Suspension of MLS services may be no less than thirty [ (]30) days nor more than one (1) year; termination of MLS services shall be a stated period of one (1) to three (3) years.

Appellant argues that because § 7(e) does not specifically refer to § 9.2, wherein the sanctions imposed on her are listed, then the Board of Realtors, under the contract, was without authority to sanction her.

 When construing a contractual agreement, the "cardinal principle . . . is to ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). Courts must give effect to the plain, ordinary, and usual meaning of a contract's words and consider the document as a whole. *Jackson County v. McClain Enterprises, Inc.*, 190 S.W.3d 633, 640 (Mo.App. W.D.2006). Under Appellant's interpretation of the contract, the Multilist Service is permitted to consider complaints concerning Multilist Rules violations and conduct hearings to determine whether a violation occurred, but has no power to sanction the offending party.

We do not construe the contract in that manner.

 Courts prefer a construction that gives meaning to all the instrument's provisions to a construction that leaves a portion of the writing useless and inexplicable. *Martin v. U.S. Fidelity and Guaranty Co.*, 996 S.W.2d 506, 511 (Mo. banc 1999). It is clear from § 9 that the Board of Directors shall consider all the written complaints having to do with violations of the Multilist Rules. Section 9.1 sets out the types of violations and then states "if a violation is determined, the Board of Directors may direct the imposition of sanction." Section 9.2 sets forth the possible sanctions. There is no other provision for sanctions in the contract. When construing the contract as a whole, the plain, ordinary words dictate that the sanctions imposed by the Standards Committee were permitted under the rules. Point II is denied.

### *Point I*

Returning to a discussion of Appellant's first point, she alleges that the case against her was brought under the Multilist Rules and not the Code of Ethics, and, therefore, § 7.31 is the appropriate provision of the Multilist Policy if the violation was not one involving ethics. For ease of discussion, we shall begin with Appellant's contention that § 7.31 is the appropriate provision of the Multilist Policies in cases of violations not involving ethics. Appellant commences her argument because the written opinion given to her of the Standards Committee hearing specifically cited "a violation of 7.31 of the Multi[l]ist Policies." She concludes that the sanctions found in § 7.31 of the Multilist Policies provide the appropriate limitations on the sanctions which could be imposed on her. Specifically, Appellant cites the following language as proof that her punishment was

outside the realm of permissible punishments:

8. Boards shall adopt written, reasonable, and appropriate rules and procedures for administration of lock box systems *which may include appropriate fines, not to exceed $1,000.* Any issuing fees, recurring fees, or other administrative costs shall be established at the discretion of the Board and set forth in the rules and procedures. All keyholders, whether Board Members or not, shall agree, as a condition of the key lease agreement, to be bound by the rules and procedures governing the operation of the lock box system.

(emphasis added).

Frankly, we are at a loss to determine from what authority § 7.31 derives. The record on appeal only contains sheets of paper with sections numbered §§ 7.30, 7.31, 7.32 and a part of 7.33. These pages were apparently faxed from the Board of Realtors to Appellant at her request after the opinion from the Standards Committee was issued. There was no explanation from what source the sections were taken. Peggy Mitchell was the chairperson of the Standards Committee which heard Appellant's appeal. When asked at trial why the Standards Committee referred to § 7.31 in its decision, she responded, "[a]ctually, I don't really know how [§ 7.31] got in there, to be blatantly honest with you. I was just trying to decide about the lock box." She testified that even though she recalled referring to the guidelines, she did not look at subsection eight of § 7.31.

At the trial, the applicability of § 7.31 from the Multilist Policies cited by the Standards Committee in its decision was a topic of extensive discussion. Respondents presented evidence that § 7.31 is part of a set of guidelines given to new Multilist companies to use when drafting their own rules and regulations and are not binding. Once the Multilist Board drafted its rules, they were approved by the Multilist Service Board of Directors, the Board of Realtors Board of Directors, and the National Association of Realtors. According to Respondents, the drafter's decision to increase the maximum fine from the recommended $1,000 to $5,000 and add a potential one-year suspension was specifically approved by the entities previously listed. The trial court's judgment referred to § 7.31 as part of "an outdated MLS Guideline." The evidence at the trial supports that determination. The trial court was free to believe that § 7.31 was not binding and did not limit the sanctions Appellant could receive.

We do not address Appellant's complaint regarding the trial court's classification as an ethics proceeding rather than a Multilist violation because regardless of how the violation was classified, as the trial court found, the range of potential punishments was the same. If the violation was a violation of the Multilist Rules, the appropriate sanction was set forth in § 9.2. Section 9.2 of the Multilist Rules permits sanctions including a maximum fine of $5,000 and suspension for not less than thirty days but no more than one year from using or subscribing to the Multilist Service. If the violation was an ethics violation, § 14 of the Code of Ethics states that disciplinary action may consist of an appropriate and reasonable fine not to exceed $5,000 and the suspension of MLS rights and privileges for no less than 30 days to one year. Point I is denied.

The judgment of the trial court is affirmed.[2]

PARRISH, J., SCOTT, J., concur.

---

**2.** Respondents' *Motion to Dismiss Appeal and for Sanctions, Due to the Frivolous Argument* *of Appellant,* which was taken with the case, is denied.